## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| R.V., a minor, by and through his mother and next friend, N.R.; N.R.; E.V., a minor, by and through her mother and next friend, C.V.; C.V.; H.A.G., a minor, by and through his mother and next friend, H.G.T.; J.G., a minor, by and through her mother and next friend, H.G.T.; B.G., a minor, by and through her mother and next friend, H.G.T.; I.G., a minor, by and through her mother and next friend, H.G.T.; H.G.T.; R.R., a minor, by and through her parents and next friends, M.M. and J.R.; M.M.; and J.R., on behalf of themselves and all others similarly situated,[1] | Civil Action No. 8:20-cv-1148 **CLASS ACTION COMPLAINT** |

Plaintiffs,

v.

STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury, 1500 Pennsylvania Avenue, N.W. Washington, D.C. 20220, and

UNITED STATES OF AMERICA, 950 Pennsylvania Avenue, NW Washington, DC 20530,

Defendants.

## INTRODUCTION

1.     This lawsuit challenges the intentional and discriminatory denial

to U.S. citizen children of the benefits of emergency cash assistance distributed

---

[1] Plaintiffs concurrently move to proceed under pseudonyms and to waive their obligations under Local Rule 102.2(a) to provide addresses and counties on the complaint.

in response to the coronavirus pandemic, based solely on the fact that one or both of their parents are undocumented immigrants.

2.      The spread of the novel coronavirus has caused not only tens of thousands of deaths and a nationwide public health crisis, but also the most severe economic downturn in years.  Millions of businesses have been shuttered.  More than 30 million people have filed for unemployment in less than 2 months.  Lines of cars extend for blocks awaiting assistance from food banks in the modern-day equivalent of the Great Depression's breadlines.

3.      In an effort to stem the tide of this nationwide emergency, Congress passed, and President Trump signed into law, the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  Among other relief, the CARES Act provides a financial lifeline to millions of people by distributing through the tax system immediate means-tested cash assistance, which the federal government calls "economic impact payments."  The Act gives to certain eligible individuals up to $1,200 per adult and up to $500 for each of the adult's children under age 17, and it directs Defendant Secretary of the Treasury Mnuchin to distribute these payments "as rapidly as possible."  *See* 26 U.S.C. § 6428.

4.      The economic impact payments are designed to enable recipients to make basic expenditures—for example, on groceries, rent, and healthcare costs—while at the same time injecting cash flow into an economy that has

been hit by a precipitous drop in demand.  As of April 28, 2020, the

government had distributed payments totaling nearly $160 billion to 89.5

million people.  The government expects that, in total, Secretary Mnuchin will

distribute more than 150 million economic impact payments under the CARES

Act.

5.     But the CARES Act discriminates against and excludes from this

expansive aid program one of the country's most vulnerable groups:  U.S.

citizen children of undocumented parents.  The CARES Act denies these

children desperately needed assistance by making the payments through the tax

system only to those who are eligible for, and file tax returns using, a social

security number—U.S.  citizens and immigrants with work authorization.

6.     Undocumented immigrants generally cannot obtain social security

numbers and instead file their tax returns and pay their taxes using an

individual taxpayer identification number (ITIN).[2]  Thus, U.S. citizen children

of undocumented immigrants do not receive the benefits of the $500 economic

impact payments specifically intended for children.  This is true even when the

children themselves, like Plaintiffs here, possess their own social security

numbers and their parents pay taxes.

7.     The refusal to distribute this benefit to U.S. citizen children

---

[2] ITINs are tax processing numbers that the IRS issues to foreign-born individuals who are ineligible for a social security number.  26 U.S.C. § 6109; 26 C.F.R. § 301.6109-1.

undermines the CARES Act's goal of providing assistance to Americans in need, frustrates the Act's efforts to jumpstart the economy, and punishes citizen children for their parents' status—punishment that is particularly nonsensical given that undocumented immigrants, collectively, pay billions of dollars each year in taxes.  More fundamentally, this discrimination violates the equal protection principles embodied in the Fifth Amendment's Due Process Clause.

8.      This lawsuit is brought by seven U.S. citizen children, and their parents on their behalf, who have been denied the benefits of the $500 economic impact payments at the time when they need it most.

9.      Plaintiffs R.V., E.V., H.A.G., J.G., B.G., I.G., and R.R.— collectively, "Citizen Children Plaintiffs"—on behalf of themselves and all others similarly situated, seek an injunction prohibiting Secretary Mnuchin from enforcing the CARES Act's unconstitutional discrimination and a declaration that the CARES Act's denial of benefits to U.S. citizen children of undocumented parents is unconstitutional.  Citizen Children Plaintiffs also seek an order awarding them the economic impact payments they are due.

10.      In addition, and in the alternative, Plaintiffs N.G., C.V., H.G.T., M.M., and J.R.—the parents of Citizen Children Plaintiffs and, collectively, "Parent Plaintiffs"—bring claims for the economic impact payments the United States has refused to distribute to them for the benefit of their children

in violation of their children's equal protection rights.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 1346.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).
Plaintiffs reside in Maryland.

## PARTIES

13.     **Plaintiff R.V.** is a United States citizen and the child of Plaintiff
N.R.  R.V. has a valid social security number and is eight years old.  R.V. relies
on N.R. for support and did not provide more than half of his own support in
2019.  But for the discriminatory denial of economic impact payments to U.S.
citizen children of undocumented parents, R.V. would have received, through
N.R., an economic impact payment of $500.

14.     **Plaintiff N.R.** is an undocumented immigrant and the mother of
Plaintiff R.V.  N.R. resides in Maryland with R.V., whom she supports
financially.  N.R. is a resident alien for tax purposes, and she pays her state and
federal taxes.  N.R. was not claimed as anyone else's dependent in 2018 or
2019.  N.R. has an ITIN and does not have a social security number.

15.     N.R. filed her 2019 tax return using her ITIN.  N.R. filed as a
head of household and her adjusted gross income was less than $35,000.  N.R.
did not receive an economic impact payment for herself or R.V.  If the
government distributed to N.R. the $500 benefit intended for children, she

would use it to provide support for R.V.

16.     **Plaintiff E.V.** is a United States citizen and the child of Plaintiff C.V.  E.V. is not married, has a valid social security number, and is nine years old.  E.V. relies on C.V. for support and did not provide more than one half of her own support in 2019.  But for the discriminatory denial of economic impact payments to citizen children of undocumented parents, E.V. would have received, through C.V., an economic impact payment of $500.

17.     **Plaintiff C.V.** is an undocumented immigrant and the mother of Plaintiff E.V.  C.V. resides in Maryland with E.V., whom she supports financially.  C.V. is a resident alien for tax purposes, and she has paid her state and federal taxes.  C.V. was not claimed as anyone else's dependent in 2018 or 2019.  C.V. has an ITIN and does not have a social security number.

18.     C.V. filed her 2019 tax return using her ITIN.  C.V. filed as a head of household and her adjusted gross income was less than $20,000.  C.V. did not receive an economic impact payment for herself or E.V.  If the government distributed to C.V. the $500 benefit intended for children, she would use it to provide support for E.V.

19.     **Plaintiffs H.A.G., J.G., B.G., and I.G.** are United States citizens and the children of Plaintiff H.G.T., with whom they reside in Maryland.  They are between the ages of three and eight years old.  Each has a valid social security number.  None provided more than one half of his or her own support

in 2019.  But for the discriminatory denial of economic impact payments to citizen children of undocumented parents, each would have received, through H.G.T., an economic impact payment of $500

20.    **Plaintiff H.G.T.** is an undocumented immigrant and the mother of Plaintiffs H.A.G., J.G., B.G., and I.G.  H.G.T. is a resident alien for tax purposes, and she has paid her state and federal taxes.  H.G.T. was not claimed as anyone else's dependent in 2018 or 2019.  H.G.T. has an ITIN and does not have a social security number.

21.    H.G.T. filed her 2018 tax return using her ITIN.  H.G.T. filed as a head of household and acts as a full-time caretaker for her children.  H.G.T. did not receive an economic impact payment for herself or her children.  If the government distributed to H.G.T. the $500 benefits intended for children, she would have used the payments to support her children.

22.    **Plaintiff R.R.** is a United States citizen and the daughter of Plaintiffs M.M., a United States citizen, and J.R., an undocumented immigrant. She lives with her parents in Maryland.  R.R. is seven months old and has a valid social security number.  R.R. relies on M.M. and J.R. for support and did not provide more than one half of her own support for either year.  But for the discriminatory denial of economic impact payments for citizen children of undocumented parents, R.R. would have received, through her parents, an economic impact payment of $500.

23.     **Plaintiffs M.M. and J.R.** are married and the parents of R.R. M.M. and J.R. financially support R.R.  J.R. is a resident alien for tax purposes and pays his state and federal taxes.  Neither M.M. nor J.R. was claimed as anyone else's dependent in 2018 or 2019.  J.R. pays his state and federal taxes, has an ITIN, and does not have a social security number.

24.     M.M. and J.R. filed their 2019 tax return using the status married filing jointly.  Their adjusted gross income was below $150,000.  M.M. and J.R. did not receive an economic impact payment for themselves or for R.R.  If the government distributed to M.M. and J.R. the $500 benefit intended for children, they would use it to provide support for R.R.

25.     **Defendant Steven T. Mnuchin** is the Secretary of the Treasury. Secretary Mnuchin is responsible for distributing economic impact payments under the CARES Act and, in his official capacity, has enforced the CARES Act's discriminatory denial of benefits to U.S. citizen children of undocumented parents.

26.     **Defendant United States of America** is sued as the appropriate defendant in an action for damages for money due under the CARES Act.

**BACKGROUND**

## I.     Economic Impact Payments Under the CARES Act

27.     Most income-earners, regardless of their immigration status, are required to pay taxes.  Through the Internal Revenue Service's administration of the tax code, the federal government collects information about the annual income, employment, address, and bank accounts of the vast majority of adults in the United States.  This infrastructure also enables the IRS to distribute money to taxpayers when they are due a refund on their income taxes.

28.     In this way, the tax system, though normally focused on collecting money due to the federal government, provides the government a convenient mechanism for delivering cash benefits to a wide swath of residents on an emergency basis.

29.     The CARES Act makes use of the tax infrastructure to distribute means-tested cash assistance through economic impact payments.  Though administered through the tax code, economic impact payments are means-tested benefits just like various other benefits, such as housing and food assistance, that are intended to benefit both adults and children.  As President Trump remarked upon signing the CARES Act into law, the Act "will deliver urgently needed relief to our nation's families, workers, and businesses."[3]

---

[3] The White House, "Remarks by President Trump at Signing of H.R.748, The CARES Act," https://www.whitehouse.gov/briefings-statements/remarks-president-trump-signing-h-r-748-cares-act/ (last visited May 4, 2020).

30.     Specifically, the CARES Act provides a cash payment of up to $1,200 for certain, but not all, statutorily "eligible" adults and up to $500 for each "qualifying child." 26 U.S.C. § 6428(a). A married couple that files jointly can receive up to $2,400 for themselves and $500 for each qualifying child.

31.     To be eligible to receive an economic impact payment under the CARES Act, a person must be a U.S. citizen or a "resident alien" and must not be claimed as a dependent on another person's tax return. *Id.* § 6428(d). A person qualifies as a "resident alien" if she is lawfully admitted for permanent residence (i.e., a "green card" holder) or if she meets the "substantial presence" test, which requires residence in the United States for 183 days over the three years prior to the end of the taxable year, using a statutory formula to calculate days. 26 U.S.C. § 7701(b). Undocumented immigrants can qualify as resident aliens under the substantial presence test, but by virtue of the discriminatory provisions challenged in this case, *see infra* Section II, their eligibility under § 6428(d) does not entitle them to an economic impact payment.

32.     To be a "qualifying child" warranting an economic impact payment of up to $500, a child must live with an eligible parent, be younger than 17 years old, and not provide more than half of his or her own financial support. *Id.* § 6428(a)(2); *id.* § 152(c).

33.     The size of the payment distributed—a maximum of $1,200 for adults and $500 for children—is reduced by $5 for each additional $100 of the

adult individual's adjusted gross income that exceeds certain thresholds.

    a.    For a married person filing jointly with her spouse, the income threshold is $150,000.  26 U.S.C. § 6428(c)(1).

    b.    For a person filing as the head of household, the income threshold is $112,500.  *Id.* § 6428(c)(2).

    c.    For any other person, including individuals who are married filing separately from their spouse, the income threshold is $75,000.  *Id.* § 6428(c)(3).

34.    To determine the eligible individual's income, the CARES Act directs the Secretary to look at the individual's income in her 2019 tax return or, if the individual has not yet filed a return for 2019, the individual's income on her 2018 return.

35.    Additionally, in implementing the CARES Act, Secretary Mnuchin has allowed anyone whose income is low enough that they are not required to file a return—meaning that their adjusted gross income is generally below $12,200 if single or $24,400 if married—to apply for economic impact payments through an online "Get My Payment" portal that the IRS has established.

## II.    The CARES Act's Discriminatory Exclusion of U.S. Citizen Children

36.    Not all who meet the "eligibility" requirements and means-testing provisions of the CARES Act are entitled to economic impact payments under the Act.  That is because the CARES Act also includes a facially discriminatory

condition that prevents the $500 payments intended for children from reaching millions of U.S. citizen children whose parents are undocumented immigrants.

37.     The CARES Act accomplishes this discriminatory exclusion by providing economic impact payments only where all filers on a tax return, and their qualifying children, have social security numbers. *Id.* § 6428(g).  Social security numbers, by law, can be issued only to citizens and immigrants with work authorization.  20 C.F.R. § 422.104(a).[4]  The CARES Act facially discriminates by cross-referencing to a statute that defines social security number to mean such numbers issued "to a citizen" or to an immigrant with work authorization.  26 U.S.C. § 6428(g)(2)(A); *id.* § 24(h)(7).  Thus, undocumented immigrants without work authorization, who must use their ITINs to pay taxes, cannot receive economic impact payments for themselves or for their U.S. citizen children.

38.     By making a social security number a prerequisite for receiving an economic impact payment, the CARES Act not only intentionally denies adult undocumented immigrants the otherwise available $1,200 payment, but also intentionally denies their U.S. citizen children—solely because of the parents' alienage—the otherwise available $500 payment.

---

[4] Social security numbers also can be issued to immigrants entitled to federally funded benefits, but those immigrants are denied the benefits of the CARES Act as well.  *See* 26 U.S.C. § 6428(g)(2)(A).

39.     For U.S. citizen children who have only undocumented parents, the CARES Act makes it impossible for the children to receive any benefit.

40.     For U.S. citizen children who have one undocumented parent and one citizen parent or immigrant parent with a social security number ("mixed-status parents"), the parent with a social security number can secure the child's benefit by filing a 2019 tax return under "married filing separately" status rather than "married filing jointly" status.  Doing so, however, often will increase the family's tax burden in an amount that reduces, or may eliminate entirely, any benefit from securing economic impact payments for qualifying children. Thus, U.S. citizen children who have mixed-status parents are denied benefits equal to those available to similarly situated U.S. citizen children who have no undocumented parents.

41.     As Representative TJ Cox observed during debates on the CARES Act, this scheme "punishes mixed-status households and denies some American citizens benefits they deserve."

42.     The CARES Act is an outlier in denying government aid intended to benefit children to U.S. citizen children simply because of their parents' undocumented status.  Many other means-tested federal benefits programs provide benefits to all eligible U.S. citizen children regardless of their parents' undocumented status.  For example:

a.     The child tax credit reaches citizen children even if their parents

are undocumented.

b.   Supplemental Nutrition Assistance Program benefits—commonly known as SNAP or "food stamps"—can be claimed for citizen children who have undocumented parents.

c.   Benefits from the Special Supplemental Nutrition Program for Women, Infants and Children—commonly known as WIC—flow to citizen children.

d.   Temporary Assistance for Needy Families (TANF) benefits— commonly known as welfare benefits—can be claimed for citizen children who have undocumented parents.

e.   Housing assistance can be claimed for citizen children who have undocumented parents.[5]

43.   Although the means of distributing the benefit to the child vary from program to program—in some, the benefit is distributed to the "household" whereas in the CARES Act, as a result of the use of the tax infrastructure, the benefit is distributed in the first instance to the parent as taxpayer—each of these programs provides additional funds specifically intended to aid children as distinct from their relatives.  It is only the CARES Act that discriminates against a broad class of U.S. citizens.

## INJURY TO PLAINTIFFS

---

[5] The Department of Housing and Urban Development has issued a notice of proposed rulemaking that would amend federal regulations to bar U.S. citizen children from receiving housing assistance if they live with undocumented parents.  *See* Housing and Community Development Act of 1980: Verification of Eligible Status, 84 FR 20589 (May 10, 2019), *available at* https://perma.cc/H87G-ZV2A.  If allowed to take effect, this proposed rule, like the CARES Act, would unconstitutionally discriminate against citizen children and relegate them to second-class citizenship.

44.     The discriminatory treatment the CARES Act inflicts on plaintiffs, and their relegation to second-class citizenship, is a serious injury in its own right.

45.     But by denying U.S. citizen children cash assistance now for discriminatory reasons—in the midst of a pandemic that has caused their families, like many others, serious hardships—the CARES Act has inflicted particularly severe injuries on an especially vulnerable group that numbers in the millions.

46.     Undocumented immigrants, on whom these children rely for support, work in large numbers in some of the businesses—including restaurant, cleaning, retail, and child-care services—that have been hardest hit by job loss in the past two months.

47.     Critically, these individuals cannot obtain unemployment insurance—which the CARES Act increased in light of its importance amid the current wave of job loss, 15 U.S.C. §§ 9021-9032—as a stopgap measure.  This leaves their U.S. citizen children without critical income needed for basic daily needs such as food, shelter, and healthcare.

48.     Even for those who have been lucky enough to keep their employment, undocumented immigrants historically occupy low-wage jobs that, even under normal circumstances, barely provide enough income for their children.

49.     These families are under aggravated economic duress because of the pandemic, which has generated new necessary expenses for cleaning supplies, masks, and other preventative measures taken to avoid getting infected as well as expenses related to learning aids for children who are no longer attending school in person.

50.     The experiences of the named Plaintiffs illustrate these harms.

51.     ***Plaintiffs R.V. and N.R.***  Because of the pandemic, N.R. lost her job at a restaurant.  She has been unable to find work since.  Her partner, with whom she and R.V. live, has been unable to work because he is sick with coronavirus and has quarantined himself.  As a result, N.R. and R.V. currently have no income.  As she continues to look for work, N.R. relies on community support and food from R.V.'s school system to provide for R.V.

52.     ***Plaintiffs E.V. and C.V.***  Because of the pandemic, the catering company for which C.V. had worked closed, and C.V.'s only income now is from part-time work at a restaurant.  Due to her loss in income, C.V. cannot pay rent and fears she and E.V. will be evicted if the current prohibition on evictions is lifted or her landlord disregards it.  Her loss of income also has left her unable to fully provide for E.V., and so E.V. must rely on community support and school-provided food.

53.     ***Plaintiffs H.A.G., J.G., B.G., I.G., and H.G.T.*** Before the pandemic, H.A.G., J.G., B.G., and I.G. received necessary financial support

16

from a family member, who has now lost his job because of the pandemic.

With this loss in income, H.G.T., who lives with and cares for the children full

time, does not know how they will pay rent in the coming months.  They now

rely on community support and, for the youngest, the Special Supplemental

Nutrition Program for Women, Infants and Children for food.  The pandemic

also has made having an internet connection necessary as her oldest children

attempt to attend school virtually, but H.G.T. cannot afford her own internet

plan and must rely on a neighbor's.  She does not know how long this

arrangement will last.

54.     ***Plaintiffs R.R., J.R., and M.M.***  To ensure that he and M.M.

fully provide for R.R., J.R. has continued to work during the pandemic in the

face of serious health concerns.  In addition to on-the-job health concerns,

J.R.'s job requires him to travel long distances; to avoid risks associated with

overnight travel, J.R. has endured a daily four-hour commute to keep his

job.  Additionally, J.R.'s employer is in a financially precarious position, and

J.R.'s job security—and the family financial security—is uncertain as a result.

55.     For each of these U.S. citizen children, the economic impact

payments would put food on the table for weeks and help keep a roof over

their heads.

## CLASS ALLEGATIONS

56.     Plaintiffs seek to certify two classes.

57.     First, Citizen Children Plaintiffs seek to certify a nationwide class defined as: all U.S. citizen children under age 17 who have been or will be denied the benefits of economic impact payments for "qualified children" under the CARES Act solely because the children have a parent who is an undocumented immigrant who has no social security number.

58.     Although the exact size of the class is an unknown, it numbers in the millions.[6] Joinder of this substantial class is impractical.

59.     There are multiple questions of law and fact common to the class. These include:

   a. What level of scrutiny applies to the CARES Act's discrimination against citizen children;

   b. Whether the CARES Act's discrimination against citizen children serves any important government interest; and

   c. What the appropriate remedy is for the CARES Act's violation of the equal protection component of the Due Process Clause.

60.     Citizen Children Plaintiffs' claims are typical of the class. But for their parents' undocumented status, Citizen Children Plaintiffs would receive the benefits of economic impact payments intended for children. The answer to whether Defendants have violated Citizen Children Plaintiffs' rights will determine whether they have violated the rights of all other proposed class

---

[6] Randy Capps, et al., *A Profile of U.S. Children with Unauthorized Immigration Parents*, Migration Policy Institute (2016), *available at* https://www.migrationpolicy.org/research/profile-us-children-unauthorized-immigrant-parents.

members.

61.     Citizen Children Plaintiffs will serve as adequate class representatives.  Their interests are aligned with the interests of the class. There is no known conflict among class members.

62.     Citizen Children Plaintiffs are represented by counsel competent to serve as class counsel.  Together, counsel have expertise in immigration law, tax law, and constitutional law and have been appointed as class counsel in other federal litigation.

63.     Certification of the class for injunctive relief is appropriate under Rule 23(b)(2) because Secretary Mnuchin has acted on grounds that apply generally to the whole class.  Additionally, certification of this class for damages is appropriate under Rule 23(b)(1) because separate actions create a risk of adjudications requiring incompatible standards of conduct for Defendants. Additionally, class treatment is appropriate under Rule 23(b)(3) because the common questions of fact and law predominate over questions specific to individual class members.  The common questions of law will determine the liability of the United States to every member of the class.  Class-wide treatment of liability is a superior means of determining the legality of the CARES Act than potentially thousands of other lawsuits.  Although the amount of the economic impact payment for individual class members may vary, the amount can be calculated in a ministerial fashion based on

information in tax returns that are, or by July 15, 2020, will be, in the United

States' possession or, for individuals who are not required to file returns, based

on information that can be provided through a system similar to the United

States' existing online portal for non-filers.  As a result, class-wide adjudication

of the United States' liability is the most efficient means of adjudication.

64.     Second, Plaintiff Parents seek to certify a nationwide class for

damages.  The class is defined as: persons whose U.S. citizen children have not

received the benefits of economic impact payments for "qualified children"

under the CARES Act solely because at least one of the children's parents is an

undocumented immigrant who has no social security number.

65.     Although the exact size of the class is an unknown, it numbers in

the millions.  Joinder of this substantial class is impractical.

66.     There are multiple questions common to the class.  These include:

    a.     What level of scrutiny applies to the CARES Act's
        discrimination against citizen children;

    b.     Whether the CARES Act's discrimination against citizen
        children serves any important government interest; and

    c.     What the appropriate remedy is for the CARES Act's
        violation of the equal protection component of the Due
        Process Clause.

67.     Plaintiff Parents' claims are typical of the class.  The United States

would have distributed economic impact payments intended for children to

Plaintiff Parents but for the undocumented status of at least one parent.  The

answer to whether the United States has illegally withheld money owed to Plaintiff Parents will determine whether it has illegally withheld money owed to all other proposed class members.

68.     Plaintiff Parents will serve as adequate class representatives. Their interests are aligned with the interests of the class. There is no known conflict among class members.

69.     Plaintiff Parents are represented by counsel competent to serve in as class counsel. Together, counsel have expertise in immigration law, tax law, and constitutional law and have been appointed as class counsel in other federal litigation.

70.     Class treatment is appropriate under Rule 23(b)(1) because separate actions create a risk of adjudications requiring incompatible standards of conduct for Defendants. Additionally, class treatment is appropriate under Rule 23(b)(3) because the common questions of fact and law predominate over questions specific to individual class members. The common questions of law will determine the liability of the United States to every member of the class. Class-wide treatment of liability is a superior means of determining the legality of the CARES Act than potentially thousands of other lawsuits. Although the amount of the economic impact payment for individual class members may vary, the amount can be calculated in a ministerial fashion based on information in tax returns that are, or by July 15, 2020, will be, in the United

States' possession or, for individuals who are not required to file returns, based on information that can be provided through a system similar to the United States' existing online portal for non-filers.  As a result, class-wide adjudication of the United States' liability is the most efficient means of adjudication.

## CLAIMS FOR RELIEF

### COUNT I
*Citizen Children Plaintiffs, on behalf of themselves and others similarly situated, against Defendant Mnuchin – violation of the Fifth Amendment of the United States Constitution*

71.    Citizen Children Plaintiffs repeat and incorporate by reference each of the allegations set forth in each of the preceding paragraphs of this Complaint.

72.    The CARES Act intentionally discriminates against U.S. citizen children who have undocumented parents, including Citizen Children Plaintiffs, by denying them the benefit of the Act's economic impact payments for children.  This punishes citizen children for their parents' immigration status and treats them worse than similarly situated citizen children whose parents are U.S. citizens or immigrants eligible to obtain social security numbers, in violation of the equal protection principles embodied in the Fifth Amendment of the Due Process Clause.  In effect, the CARES Act renders U.S. citizen children like Citizen Children Plaintiffs second-class citizens.

73.    Denying U.S. citizen children economic impact payments serves

no important government interest.  It undermines the United States' goals of providing urgent cash assistance for Americans to obtain basic necessities and of injecting money into the economy during the crisis brought on by the coronavirus pandemic.

74.     Denying U.S. citizen children economic impact payments is also not substantially related to any interest the government has in denying assistance to undocumented relatives of citizen children.  The CARES Act denies economic impact payments to undocumented adults and children. Denying U.S. citizen children the economic impact payments intended specifically for children does not further the aim of denying benefits to undocumented immigrants.

## COUNT II
### *Citizen Children Plaintiffs, on behalf of themselves and others similarly situated, against Defendant United States – action for money damages under 26 U.S.C. § 6428 and 28 U.S.C. 1346(a)(2)*

75.     Citizen Children Plaintiffs repeat and incorporate by reference each of the allegations set forth in each of the preceding paragraphs of this Complaint.

76.     26 U.S.C. § 6428 is a money-mandating statute that obligates the United States to disburse funds for the benefit of Citizen Children Plaintiffs.

77.     The CARES Act intentionally discriminates against U.S. citizen children who have undocumented parents by denying them the benefit of the

Act's economic impact payments for children.  This punishes citizen children for their parents' immigration status and treats them worse than similarly situated citizen children whose parents are U.S. citizens or immigrants eligible to obtain social security numbers, in violation of the equal protection principles embodied in the Fifth Amendment of the Due Process Clause.  In effect, the CARES Act renders U.S. citizen children like Citizen Children Plaintiffs second-class citizens.

78.     Denying U.S. citizen children economic impact payments serves no important government interest.  It undermines the United States' goals of providing urgent cash assistance for Americans to obtain basic necessities and of injecting money into the economy during the crisis brought on by the coronavirus pandemic.

79.     Denying U.S. citizen children economic impact payments is also not substantially related to any interest the government has in denying assistance to undocumented relatives of citizen children.  The CARES Act denies economic impact payments to undocumented adults and children. Denying U.S. citizen children the economic impact payments intended specifically for children does not further the aim of denying benefits to undocumented immigrants.

80.     Defendant United States' constitutional violation has denied Citizen Children Plaintiffs the $500 economic impact payments to which they

otherwise are entitled.

## COUNT III

### *Parent Plaintiffs, and all others similarly situated, against the United States – Action for money damages under 26 U.S.C. § 6428 and 28 U.S.C. § 1346(a)(2)*

81.     Parent Plaintiffs repeat and incorporate by reference each of the allegations set forth in each of the preceding paragraphs of this Complaint.

82.     Parent Plaintiffs have a close relationship with their children. Each provides financial and/or emotional support and serves as a primary caretaker.

83.     26 U.S.C. § 6428 is a money-mandating statute that obligates the United States to disburse funds to Parent Plaintiffs for the benefit of their U.S. citizen children.

84.     The refusal to disburse the economic impact payments intended for children to Parent Plaintiffs, even though their children are United States citizens, violates Citizen Children Plaintiffs' equal protection rights embodied in the Fifth Amendment.

85.     The CARES Act intentionally discriminates against U.S. citizen children who have undocumented parents by denying them the benefit of the Act's economic impact payments for children.  This punishes citizen children for their parents' alienage and treats them worse than similarly situated citizen children whose parents are U.S. citizens or immigrants who are eligible to

obtain social security numbers, in violation of the equal protection principles embodied in the Fifth Amendment of the Due Process Clause.  In effect, the CARES Act renders U.S. citizen children like Citizen Children Plaintiffs second-class citizens.

86.     Denying U.S. citizen children economic impact payments serves no important government interest.  It undermines the United States' goals of providing urgent cash assistance for Americans to obtain basic necessities and of injecting money into the economy during the crisis brought on by the coronavirus pandemic.

87.     Denying U.S. citizen children economic impact payments is also not substantially related to any interest the government has in denying assistance to undocumented relatives of citizen children.  The CARES Act denies economic impact payments to undocumented adults and children. Denying U.S. citizen children the economic impact payments intended specifically for children does not further the aim of denying benefits to undocumented immigrants.

88.     Defendant United States' constitutional violation has denied Citizen Children Plaintiffs, and all others similarly situated, the $500 economic impact payments to which they otherwise are entitled.

**RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests that this Court:

A. Declare unconstitutional the CARES Act's denial of the distribution of economic impact payments for the benefit of Citizen Children Plaintiffs and all similarly situated U.S. citizen children because of their parents' undocumented status;

B. Enjoin Secretary Mnuchin from refusing to distribute economic impact payments for the benefit of Citizen Children Plaintiffs and all similarly situated U.S. citizen children because of their parents' undocumented status;

C. Award damages to Citizen Children Plaintiffs and all similarly situated citizen children in amounts of up to $500 for each citizen child, in accordance with the thresholds in the CARES Act;

D. In the alternative, award damages to Plaintiff Parents and all similarly situated parents of citizen children in amounts of up to $500 for each citizen child, in accordance with the thresholds in the CARES Act;

E. Award Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

F. Award such additional relief as the interests of justice may require.

May 5, 2020                                Respectfully submitted,

                                           /s/ Jonathan L. Backer
                                           Jonathan L. Backer (D. Md. 20000)
                                           Robert D. Friedman*
                                           Amy L. Marshak*
                                           Mary B. McCord*

INSTITUTE FOR CONSTITUTIONAL
  ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
(202) 662-9835
jb2845@georgetown.edu


Leslie Book*
Villanova University
Charles Widger School of Law
299 N. Spring Mill Rd.
Villanova, PA 19085
(610)519-6416
book@law.villanova.edu

*Attorneys for Plaintiffs*

*\*Pro hac vice motions forthcoming*