**INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION**
**GEORGETOWN UNIVERSITY LAW CENTER**

May 29, 2020

The Honorable Paul W. Grimm
United States District Court for the District of Maryland
6500 Cherrywood Lane, Suite 465A
Greenbelt, MD 20770

   Re: <u>R.V., et al., v. Mnuchin, et al.</u>, 8:20-CV-1148-PWG (D. Md.)

Dear Judge Grimm,

  The Coronavirus Aid, Relief, and Economic Security (CARES) Act has provided immediate means-tested financial assistance to tens of millions of Americans grappling with the economic fallout from the coronavirus pandemic. This case challenges the discriminatory denial of that assistance to one subset of U.S. citizens: children with one or more parents who are undocumented immigrants. This disparate treatment—which punishes children for their parents' status—lacks any substantial relation to an important government interest and, consequently, violates the equal protection component of the Fifth Amendment.

  As explained below, the grounds for dismissal that Defendants have asserted lack merit, and this case should proceed to summary judgment motion practice.

**I. The CARES Act's Structure and Plaintiffs' Claims**

  Section 2201(a) of the CARES Act, codified at 26 U.S.C. § 6428, uses the federal tax infrastructure to provides means-tested financial assistance, termed "economic impact payments" (EIPs), of up to $1,200 for adults and $500 for children where certain prerequisites are met. First, the tax filer's income must fall below a statutory threshold. *Id.* § 6428(c). Second, adults must be "eligible," meaning not a dependent of another person and either a citizen or a resident alien—where residency is defined by durational presence in the United States, not lawful status. *Id.* §§ 6428(d), § 7701(b)). Third, children must "qualify[]" in order to receive the additional benefit through a tax-filing parent. *Id.* § 6428(a)(2). This means that the child must be under age 17, not depend primarily on herself for support, and reside with the tax-filing parent. *Id.* § 24(c). A tax filer can satisfy these requirements in calendar year 2020 based on her 2019 or 2018 tax return, *id.* § 6428(f), or in calendar year 2021 based on her 2020 tax return, *id.* § 6428(a).[1]

  In addition, the CARES Act imposes a hurdle on top of these requirements that is unrelated to need. Section 6428(g) requires that, to receive an EIP—including the portion earmarked for children—an eligible individual must include on her tax return a social security number (SSN) issued "to a citizen of the United States," to a lawful permanent resident (LPR), or to a noncitizen who is not an LPR but has work authorization. *Id.* §§ 6428(a)(2), 24(h)(7). Undocumented immigrants cannot obtain an SSN and instead use an "individual taxpayer identification number" (ITIN) to file

---

[1] Thus, a person entitled to an EIP now can lose that entitlement due to a change in income or a child aging out if forced to wait—as Defendants assert is proper—until 2021 to file a claim. Plaintiffs are considering amending the complaint to add such a plaintiff.

taxes. This means that "qualifying" U.S. citizen children, even if they have valid SSNs, are denied the benefits of the $500 EIP for children if their parents are undocumented. *Id.* § 6428(g)(1)(A).

Plaintiffs are seven U.S. citizen children and their parents. Citizen Children Plaintiffs have not received the benefit of the $500 payments intended for children because one or more of their parents are undocumented. They seek an injunction prohibiting Defendants from enforcing this discriminatory policy and a declaration that it is unlawful, or, in the alternative, damages. Also in the alternative, Parent Plaintiffs seek damages on their children's behalf.

## II.   Section 6428 Discriminates Against Citizen Children Plaintiffs

Defendants argue that Plaintiffs have failed to state a claim on the merits because § 6428 does not create an alienage classification and, even if it does, the classification survives rational-basis review. Defendants are wrong at each step.

The SSN requirement is an obvious proxy intended to exclude undocumented immigrants. Defendants do not contest that facial discrimination can be effectuated through a proxy. Defs.' Ltr. at 4; *see also, e.g.*, *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979) ("a classification that is ostensibly neutral but is an obvious pretext for racial discrimination" is "presumptively invalid"). Nor do they dispute that the SSN requirement efficiently excludes undocumented immigrants. And for good reason. Undocumented immigrants cannot obtain an SSN, 20 C.F.R. § 422.104 (delineating "who can be assigned a social security number"), and must use an ITIN instead. 26 C.F.R. § 301.6109-1(d)(3). Undocumented immigrants thus make up the "vast majority" of ITIN holders.[2]

Defendants claim that § 6428's SSN requirement is not a proxy, but a classification based on the policy choice to provide EIPs based on work authorization. This characterization does not withstand scrutiny. First, the CARES Act does not require a person to have earned income to receive an EIP, so any purported policy distinction based on work authorization has no relationship to the CARES Act's goals of providing emergency cash assistance for basic life necessities while injecting cash flow into the economy. This distinguishes § 6428's use of SSNs from that of the *Earned Income* Tax Credit and the 2008 stimulus package, to which Defendants compare it.[3] Second, the CARES Act provides benefits for children only if the children do *not* support themselves. The Act's requirement that children receiving assistance have an SSN therefore makes little sense if its purpose is to ensure work authorization. Third, although the CARES Act generally provides EIPs to married couples filing jointly only where both spouses have SSNs (thus denying the benefit to mixed-status couples who file jointly), it grants an exception—unrelated to work authorization but focused on helping a favored group—if one spouse serves in the military. 26 U.S.C. § 6428(g)(3).

---

[2] Laura E. Hill & Hans P. Johnson, Public Policy Inst. of Cal., *Unauthorized Immigrants in California* 11 (2011), *available at* https://perma.cc/TX46-YAXM. The other ITIN holders generally include people who are ineligible for EIPs because they are not "resident aliens" under § 6428(d). Regardless, a proxy need not be a perfect one-to-one fit. *See McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) (gray hair can be a proxy for age because "the 'fit' . . . is sufficiently close that they would form the same basis for invidious classification").

[3] Defendants also compare the requirement to one used in the Aid to Families with Dependent Children program discussed in *McElrath v. Califano*, 615 F.2d 434 (7th Cir. 1980). That program pre-dated the existence of ITINs, and the replacement program, Temporary Assistance for Needy Families (TANF), allows U.S. citizen children to receive benefits even if their parents are undocumented. *See* TANF, 64 Fed. Reg. 17720-01, at 17740.

These inconsistencies, along with the reality that undocumented immigrants cannot obtain SSNs, demonstrate that the requirement serves as an intentional proxy for undocumented status.[4]

Moreover, this case does not challenge just § 6428's alienage classification, for which Defendants assert that rational-basis scrutiny applies. Rather, it challenges the imposition of this classification on citizen children. Although children like Plaintiffs must independently "qualify" for an additional $500 to be disbursed and must have their own SSN, they are nonetheless denied the benefit of that assistance because their parents are undocumented. In this way, the CARES Act discriminates against children based on their *parents'* status.

The Supreme Court has recognized that "[b]urden[ing] . . . children for the sake of punishing the illicit" status of their parents "is illogical and unjust." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). To protect against the unwarranted effects of such discrimination, laws that classify children based on their parents' status are subject to heightened scrutiny, *i.e.*, the classification must be substantially related to advancing an important government interest. *Id.*; *Lewis v. Thompson*, 252 F.3d 567, 591 (2d Cir. 2001) (heightened scrutiny applied to exclusion of citizen children of undocumented mothers from automatic Medicaid enrollment).

The CARES Act's blanket exclusion of U.S. citizen children of undocumented parents does not survive heightened scrutiny. Aside from the circular desire to exclude "statutorily ineligible individuals," the only justifications that Defendants offer are "the efficient and accurate implementation of the CARES Act" and the reduction of "fraud and abuse." Defs.' Ltr. 5. Notably, these have nothing to do with "work authorization." In any event, the purported necessity that all members of a family unit possess an SSN to ensure efficiency and prevent fraud is belied by Congress's extension of EIPs to SSN holders who file taxes separately from their ITIN-holding spouses; to SSN holders whose children lack an SSN; and to military families when one spouse lacks an SSN. 26 U.S.C. § 6428(g).

Indeed, Defendants' justifications are too conclusory to survive even rational-basis review. Defendants provide no explanation for how excluding ITIN holders reduces fraud or leads to greater efficiency, let alone explain how those interests are furthered by excluding the *U.S. citizen children* of ITIN holders, which is the actual discrimination that must be justified in this case. *Cf. Jimenez v. Weinberger*, 417 U.S. 628, 636 (1974) (blanket exclusion of illegitimate children not "reasonably related to" "prevention of spurious claims" when it defeated statutory purpose of "provid[ing] for dependents").

### III.   Plaintiffs Have Standing

Defendants argue that Citizen Children Plaintiffs lack an injury-in-fact because the CARES Act distributes financial assistance in the first instance to Parent Plaintiffs. But a person need not be the immediate recipient of a government benefit to have Article III standing to challenge its denial. *See, e.g., Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977). In *Arlington Heights*, for example, a housing developer's rezoning application was denied for discriminatory reasons. The Court found that an individual who lived in a nearby city had standing to challenge the denial because it deprived him of the "opportunity" to seek to live in the not-yet-constructed housing. *Id.* at 264 (citing *Warth v. Seldin*, 422 U.S. 490, 505 (1975)); *see also, e.g., W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*, 734 F.2d 1570, 1574 (D.C. Cir. 1984) (health center had standing to challenge denial

---

[4] Defendants observe that "[m]any non-U.S. citizens have an SSN," Defs.' Ltr. at 4, but the Supreme Court has held that discrimination against a subclass of noncitizens still creates an alienage classification. *Nyquist v. Mauclet*, 432 U.S. 1, 7-9 (1977).

of funding to West Virginia because, if funding were increased, center would have an "opportunity to compete" for it).

Citizen Children Plaintiffs' injury here is even more concrete. They are not merely losing the "opportunity" to apply for emergency assistance; they are losing the actual benefits earmarked for children that they otherwise would have enjoyed were it not for their parent's undocumented status. This denial leaves them without access to funds that could be used to obtain food, stabilize their housing situation, and increase their ability to participate in online learning while schools are closed. Compl. ¶¶ 51-54. The child support cases Defendants cite as contrary authority, Defs.' Ltr. at 3, address who may seek child support under *state law*; they do not even mention Article III's injury-in-fact requirement.

Defendants also broadly assert that courts "generally do not permit litigating the tax liability of others." Defs.' Ltr. at 3. Setting aside that this case is about financial assistance, not "tax liability," *see infra* at 5, each case Defendants cite involved an attenuated chain of causation that made redress of the plaintiffs' injuries speculative. *E.g.*, *Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014) (rejecting claim of standing based on "a long, intermediated chain of effects" dependent on the "market economy"). The chain of causation here is far more direct, and redress is certain. Compl. ¶¶ 14-24.

Finally, Defendants attack Parent Plaintiffs' "prudential or statutory standing" on the ground that their claim for damages depends on their children's rights. Defs.' Ltr. at 3. A party can proceed based on such "third-party standing" when a "hindrance" prevents the third party from asserting its own rights. *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017). Plaintiffs do not dispute that if this Court holds that Citizen Children Plaintiffs can vindicate their own rights, Parent Plaintiffs' claim may be subject to dismissal. But it cannot be, as Defendants urge, that *no* party can challenge the discriminatory statute at issue.

## IV.   This Court Has Jurisdiction Over Plaintiffs' Claims

**<u>Injunctive and Declaratory Relief.</u>** This Court has jurisdiction over Citizen Children Plaintiffs' claim for injunctive and declaratory relief under 28 U.S.C. § 1331 because it arises under the Constitution. Defendants argue that § 1331 does not waive sovereign immunity "against the United States." Defs.' Ltr. at 3. But this claim is brought only against Defendant Mnuchin, *see* Compl. at 22, and, thus, presents a routine application of *Ex Parte Young* principles. *See Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 327 (2015).

Defendants further argue that there is no jurisdiction because Citizen Children Plaintiffs must raise their claims in a tax refund suit after exhausting administrative remedies. As relevant here, the refund statute provides a cause of action for the "recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected." 26 U.S.C. § 7422(a). In recent cases, Defendants have argued that this language should be "construed narrowly." Br. of Appellant 24, 41, *Bank of America v. United States*, No. 19-2357 (Fed. Cir. Nov. 4, 2019); *see also Pfizer Inc. v. United States*, 939 F.3d 173, 179 (2d Cir. 2019) (accepting Defendants' argument). And examining this text—a step Defendants now conveniently skip—demonstrates that it does not govern here.

First, this suit does not seek the recovery of anything wrongfully "assessed." "The term 'assessment' involves a 'recording' of the amount the taxpayer owes the Government." *Hibbs v. Winn*, 542 U.S. 88, 100 (2004). It "serves as the trigger for levy and collection efforts." *Id.* at 102. Plaintiffs do not contend that the IRS improperly assessed Parent Plaintiffs' tax liability. Second, Plaintiffs do not complain of taxes wrongfully "collected." This is not a case where the disfavored

class has been taxed at a higher rate or made payments under an illegal tax, but one where that class has been denied assistance disbursed to others similarly situated. Third, even if this case did concern taxes illegally "assessed" or "collected," a refund action still would not be an available vehicle for *Citizen Children Plaintiffs* to vindicate their rights: they do not seek the "recovery" of anything that *they* have paid. Rather, their claim is for equal treatment by means of injunctive and declaratory relief. "Section 7422(a) does not allow for prospective relief. Instead, it bars [absent exhaustion] suit for the *recovery* of any internal revenue tax alleged to have been erroneously or illegally assessed or collected." *King v. Burwell*, 759 F.3d 358, 366-67 (4th Cir. 2014) (emphasis in original), *aff'd* 135 S. Ct. 2480 (2015).

Importantly, forcing Plaintiffs into a refund action to obtain the EIP they are due based on their 2019 returns would do nothing to further § 7422's purposes. Along with a prohibition on injunctions against the "assessment or collection" of taxes prior to the payment of taxes, *see* 26 U.S.C. § 7421—which Defendants notably do not invoke—post-payment refund actions under § 7422 exist to ensure the orderly collection of revenue owed and to provide the IRS with an opportunity to administratively determine whether a taxpayer has overpaid a tax liability. But as Defendants previously explained in addressing the materially identical provisions of the 2008 stimulus package, "[t]he stimulus payment . . . is not really a refund of an overpayment at all. In truth it is . . . a statutory windfall." Amicus Br. of United States 5, *In re Smith*, No. 08-1664 (Bankr. S.D Ind. Aug. 6, 2008). This reflects Congress's goal of providing immediate financial assistance; forcing a refund suit undermines that aim while doing nothing to advance § 7422's revenue-collection focus.

**<u>Damages</u>.** Both sets of Plaintiffs also have properly asserted claims for damages directly under the CARES Act. The Little Tucker Act is a jurisdictional statute that "waives sovereign immunity protection and authorizes monetary claims 'founded either upon the Constitution, or any Act of Congress.'" *South Carolina v. United States*, 221 F. Supp. 3d 684, 693 (D.S.C. 2016) (quoting 28 U.S.C. § 1346(a)(2)). A statute authorizes monetary claims if it is "money-mandating," that is, if the statute "can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [it] impose[s]." *United States v. Mitchell*, 463 U.S. 206, 219 (1983). When a money-mandating provision violates a plaintiff's equal protection rights, courts read the provision "in light of the Fifth Amendment." *E.g.*, *Gentry v. United States*, 546 F.2d 343, 348 (Ct. Cl. 1976) (claim for annuity benefit that was denied due to illegitimacy).

Defendants' sole argument that § 6428 is not money-mandating is that it is a "tax statute." Defs.' Ltr. at 4. They provide no citation for the assertion that tax statutes cannot be money-mandating, and have recently (successfully) argued the opposite. *See Pfizer Inc.*, 939 F.3d at 176; *see also, e.g.*, *New York & Presb. Hosp. v. United States*, 881 F.3d 877, 882 (Fed. Cir. 2018) (provision that "mandates the Government to reimburse FICA taxes paid by an employer" is money-mandating). To be sure, "the [Little] Tucker Act is displaced when a law assertedly imposing monetary liability on the United States contains its own judicial remedies." *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1329 (2020). But neither the CARES Act nor refund actions, as explained above, afford a separate remedy for EIPs denied this year.

* * *

Defendants provide no valid grounds for dismissal. To the extent the Court would like further briefing on any issue presented herein, Plaintiffs respectfully request that it be incorporated into summary judgment briefing.

Respectfully submitted,

/s/ Jonathan L. Backer

Jonathan L. Backer (D. Md. 20000)

Robert D. Friedman*
Amy L. Marshak*
Mary B. McCord*
INSTITUTE FOR CONSTITUTIONAL
 ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
(202) 662-9835
jb2845@georgetown.edu

Leslie Book*
Villanova University
Charles Widger School of Law
299 N. Spring Mill Rd.
Villanova, PA 19085
(610)519-6416
book@law.villanova.edu

*Attorneys for Plaintiffs*

*\*Admitted pro hac vice*