IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **R.V. et al.,** | * | |
| **v.** | * | Case No. 20-cv-1148 |
| **Mnuchin, et. al,** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses the Government's letter regarding a proposed motion to dismiss, ECF No. 32, and Plaintiffs' response, ECF No. 33.  For the reasons discussed below, the Government's letter is construed as a motion to dismiss and is denied without prejudice.  This case will proceed with the Government filing an answer, and the Court will schedule a conference call to determine whether any discovery is needed before scheduling the briefing of cross motions for summary judgment.  Because the briefing on the Government's intended motion to dismiss was both expedited and truncated, the Government may reassert its arguments for dismissal with any additional authority as part of the summary judgment briefing.

## Background

To begin, I briefly memorialize the discussion with the parties during our video conference on May 8, 2020.  During that conference, we discussed the unprecedented nature of the COVID-19 pandemic, its strain on the resources of the Court and the parties, and its particular relevance to the claims of this case.  In light of this, the parties agreed to outline the bases for a proposed motion to dismiss and opposition in letters of five pages or less, single spaced.  I informed the parties that I would review their letters to determine whether full briefing was necessary, and if not decide whether to dismiss the case or allow it to move forward.  If the

case did move forward, the Government's proposed bases to dismiss the case would be preserved and they could raise them again at the summary judgment stage.

Turning to the substance of this case, Plaintiffs are seven children who are U.S. citizens ("Citizen Children Plaintiffs"), and their parents, one or both of which is an undocumented immigrant ("Plaintiff Parents"). Compl., ECF No. 1 at ¶¶ 13–21. Plaintiffs challenge the allegedly intentional and discriminatory denial to U.S. citizen children of the benefits of emergency cash assistance distributed under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act in response to the COVID-19 pandemic solely because one or both of a child's parents are undocumented immigrants. *Id.* at ¶ 1.

The CARES Act provides "economic impact payments" of up to $1,200 for eligible individuals and $500 for each of the individual's qualifying children under age 17. 26 U.S.C. § 6428(a). The Act directs Defendant Secretary of the Treasury Mnuchin to distribute these payments "as rapidly as possible." 26 U.S.C. § 6428(f). The Act requires a recipient of the economic impact payments to have a social security number ("SSN"), which excludes undocumented immigrants without a work authorization who file taxes with an Individual Taxpayer Identification Number. Compl. at ¶ 37; 26 U.S.C. § 6428(g); 20 C.F.R. §422.104(a). The result is that qualifying U.S. citizen children who have only undocumented parents cannot receive the $500 economic impact payments intended for their benefit. Compl. at ¶ 39. Similarly, U.S. citizen children who have one undocumented parent and one citizen parent or immigrant parent with a social security number cannot receive the $500 economic impact payments intended for their benefit unless the parents file a 2019 tax return as "married filing separately" rather than "married filing jointly," which can increase the family's tax burden. *Id.*

at ¶ 40.  Plaintiffs allege that this scheme intentionally discriminates against U.S. citizen children solely because of their parents' alienage.  *Id.* at ¶ 3.

Plaintiffs seek to certify two classes.  First, Citizen Children Plaintiffs seek to certify a nationwide class of "all U.S. citizen children under age 17 who have been or will be denied the benefits of economic impact payments for 'qualified children' under the CARES Act solely because the children have a parent who is an undocumented immigrant who has no social security number."  *Id.* at ¶ 57.  Second, Parent Plaintiffs seek to certify a nationwide class for damages of "persons whose U.S. citizen children have not received the benefits of economic impact payments for 'qualified children' under the CARES Act solely because at least one of the children's parents is an undocumented immigrant who has no social security number."  *Id.* at ¶ 64.

Plaintiffs allege three counts for relief.  First, Citizen Children Plaintiffs, on behalf of themselves and all others similarly situated, bring a claim against Secretary of the Treasury Mnuchin for violation of the Fifth Amendment of the United States Constitution for intentional discrimination based on their parents' alienage.  *Id.* at  ¶¶ 71–74.  Second, Citizen Children Plaintiffs, on behalf of themselves and all other similarly situated, bring a claim against the United States for money damages under 26 U.S.C. § 6428 and 28 U.S.C. 1346(a)(2).  *Id.* at ¶¶ 75–80.  Third, Parent Plaintiffs, on behalf of themselves and all others similarly situated, bring a claim against the United States for money damages under 26 U.S.C. § 6428 and 28 U.S.C. § 1346(a)(2).

Pending is the Government's letter, construed as a motion to dismiss, in which the Government argues the Plaintiffs' lack standing, this Court lacks jurisdiction, and Plaintiffs

failed to state a claim. ECF No. 32. Plaintiffs have filed a response. ECF No. 33. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018).

## Standard of Review

Plaintiffs' claims are subject to dismissal if they "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A pleading must meet the standard of Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain factual content, and more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Therefore, mere legal conclusions will not suffice. *Iqbal*, 556 U.S. at 678. Finally, the factual allegations presented in the complaint must be construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008).

## Discussion

In its letter, the Government outlines three bases to dismiss the case. First, that the Plaintiffs lack Article III and statutory standing. Second, that the Court lacks subject matter jurisdiction because the Government has not waived sovereign immunity. And third, that the Plaintiffs have failed to state a claim. ECF No. 32. Plaintiffs oppose each argument. ECF No. 33. I discuss each in turn.

**A. Standing**

The Government argues that the Citizen Children Plaintiffs, and the Parent Plaintiffs as their representatives, lack both Article III and statutory standing. For Article III standing, a plaintiff must meet three requirements:

> (1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (*quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (same).

The Government argues that the plaintiffs cannot establish injury in fact because they are not "among the injured." ECF No. 32 at 2 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)). This is because the CARES Act structures the economic impact payments to inure to parents, and not to children, and therefore children cannot claim to be injured by their parents' failure to receive any payments. The Government cites to cases regarding the Child Tax Credit and state child support payments to support the proposition that children do not have a direct interest needed for standing when seeking to recover payments for their benefit that are made to parents. ECF No. 32 at 2–3 (citing *In re Parisi*, 2010 WL 1849386, at *2 (Bankr. E.D.N.Y. May 6, 2010); *In re Hardy*, 787 F.3d 1189, 1193 (8th Cir. 2015); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Matter of Hosier*, 875 F.2d 128, 129 (7th Cir. 1989); *Kelleher v. Kelleher*, 316 N.E.2d 212, 215 (Ill. App. 1974); *Ben Ami v. Ben Ami*, 168 N.E.2d 723 (N.Y. 1960)).

In response, Plaintiffs argue that a person need not be the immediate recipient of a government benefit to have Article III standing to challenge its denial. ECF No. 33 at 3–4 (*citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) and *W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*, 734 F.2d 1570, 1574 (D.C. Cir. 1984)). In *Village of Arlington*, the Supreme Court held that an individual who was interested in living in a particular community had standing to challenge a denial of a rezoning application that blocked an affordable housing project from being approved for allegedly discriminatory reasons. 429 U.S. at 264. Although it was not certain that the housing development would materialize, or that the plaintiff would live there, he adequately alleged injury that "his quest for housing nearer his employment has been thwarted by official action that is racially discriminatory." *Id.* Similarly, in *West Virginia Association of Community Health Centers, Inc. v. Heckler*, the D.C. Circuit found that two non-profit health organizations had standing to challenge the formula adopted by the Secretary of Health and Human Services for awarding block grants, alleging that West Virginia was entitled to additional monies. 734 F.2d at 1573, 1576. Although there was no guarantee that the organizations would receive additional money from West Virginia even if the funding formula were changed, the Court found that it was sufficient that they "qualified" for receiving grants from the state and that the Secretary's formula deprived them of the opportunity to "compete" for additional funding. *Id.* at 1576.

Here Citizen Children Plaintiffs, and the Parent Plaintiffs on their behalf, allege that they were deprived the benefit of economic impact payments that the children otherwise "qualified" for, except for the alleged discrimination based on their parents' alienage. This discrimination allegedly deprived them of funds that would go toward purchasing cleaning supplies and other preventative measures related to COVID-19, healthcare, food, shelter and school supplies. *See*

6

Compl. at ¶¶ 44–55. Like the plaintiffs in *Village of Arlington* and *Heckler*, Citizen Children Plaintiffs, and the Parent Plaintiffs as their representatives, were deprived of a chance to benefit from the $500 economic impact payments for qualifying children. In other words, even if the economic impact payments are not sent directly to children, Plaintiffs have sufficiently alleged a causal connection that they have been injured by being denied the opportunity to benefit from them.

The cases cited by the Government are not persuasive to the contrary. *In re Parisi* involved a bankruptcy proceeding in which the debtor argued that the Child Tax Credit was not property of the bankruptcy estate and therefore she was entitled to retain the funds on the theory that it was a trust fund or a grant for families with dependent children. No. 10-70021-478, 2010 WL 1849386, at *1 (Bankr. E.D.N.Y. May 6, 2010). The bankruptcy court rejected this view, finding no evidence from the legislative history that Congress intended the Child Tax Credit to be held in trust for the benefit of the child and exempt from the parent's creditors. *Id.* at *2. But the opinion did not address Article III standing. The Eighth Circuit in *In re Hardy*, 787 F.3d 1189, 1197 (8th Cir. 2015) held that the Additional Child Tax Credit qualified as a public assistance benefit under Missouri law and was therefore exempt from the debtor's bankruptcy estate, but again did not address standing. Similarly, the child support cases cited by the Government relate to child support payments under the laws of Illinois and New York and do not discuss Article III standing. Moreover, even if economic impact payments under the CARES Act were analogous to the Child Tax Credit, Additional Child Tax Credit, or child support payments under state law such that they are paid directly to parents and not to children, this still does not address whether children suffered an injury in fact based on the lost opportunity to benefit from the economic impact payments.

Therefore Citizen Children Plaintiffs and the Parent Plaintiffs as their representatives have suffered an injury in fact. The Government does not dispute that this injury is fairly traceable to the challenged action of the defendant or that the injury would be redressed by a favorable decision. Taken together, Plaintiffs have Article III standing.

As to statutory standing, the Government argues that Plaintiffs fall outside of the "zone of interests protected by the law invoked." ECF No. 32 at 3 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–29 (2014)). "Whether a plaintiff comes within the 'zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc*, 572 U.S. at 127 (internal quotation marks omitted).

Plaintiffs meet the test for statutory standing. As described above, in response to the COVID-19 pandemic, the CARES Act directs Secretary Mnuchin to distribute economic impact payments "as rapidly as possible" of up to $1,200 for eligible individuals and $500 for each of the individual's qualifying children. 26 U.S.C. § 6428(a), (f). Each of the Citizen Children Plaintiffs alleges that they meet the definition of a "qualifying child" under the CARES Act and would therefore have the opportunity to benefit from the economic impact payments, but for the discrimination against them based on their parents' alienage. Therefore the interests of the Citizen Children Plaintiffs, and the Parent Plaintiffs as their representatives, in the opportunity to enjoy the benefit of the economic impact payments for food, shelter, and supplies, are squarely within zone of interests of the statute.

The Government argues that the Citizen Children Plaintiffs, and the Parent Plaintiffs on their behalf, fall outside the zone of interests of the CARES Act because they are attempting to litigate the tax benefits of others – namely, the parents. ECF No. 32 at 3. The Government cites

several cases involving other provisions of the tax code or benefits in support of its position that courts generally do not permit litigating the tax liability of others or to obtain another's benefits. *Id.* (*citing Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 36 (1976); *Warth v. Seldin*, 422 U.S. 490, 498–501 (1975); *Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014); *United States v. Williams*, 514 U.S. 527, 536 (1995)).

These cases do not establish that the Citizen Children Plaintiffs lack statutory standing. *Simon v. E. Ky. Welfare Rights Org.* and *Warth v. Seldin* address Article III standing, not statutory standing. For the reasons discussed above, Plaintiffs have established Article III standing. In *Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014), physicians who mainly accepted cash and not insurance challenged portions of the Patient Protection and Affordable Care Act ("ACA") on the theory that it would reduce demand for their services. The Seventh Circuit found that the plaintiffs lacked Article III standing, reasoning that the injury was too remote, and also noted that the plaintiffs were outside the statutory zone of protection of the ACA as "[o]nly persons seeking to advance the interests protected by the mandatory-insurance portions of the Affordable Care Act would have a plausible claim to relief." *Koskinen*, 768 F.3d at 642. In contrast to the physicians in *Koskinen*, whose theory of liability depended on tenuous assumptions regarding shifting economic demand, the Citizen Children Plaintiffs' claims here are directly related to the interests protected by the CARES Act.

The Government also cites *United States v. Williams*, 514 U.S. 527, 536 (1995), but if anything, that case supports Plaintiffs. In *Williams*, the plaintiff paid a tax lien under protest that was assessed against her husband's interest on property they jointly owned before it was deeded to Williams as part of a divorce settlement without her knowledge of the lien. Williams later requested a refund but was denied. The Government argued that Williams could not bring suit

for a refund because the tax was never assessed against Williams in the first place. The Supreme Court rejected this view, finding that Congress did not intend such a result and noting that "[t]he Government's strained reading of § 1346(a)(1), . . . would leave people in Williams' position without a remedy. . . This consequence reinforces our conclusion that Congress did not intend refund actions under § 1346(a)(1) to be unavailable to persons situated as Lori Williams is.") *United States v. Williams*, 514 U.S. at 536. While this involves a different provision of the tax code, it is instructive in that the Government's reading of the CARES Act, taken to its logical conclusion, would limit *anyone* from challenging the alleged unlawful discrimination against the Citizen Children Plaintiffs based on their parents' alienage. Thus, the Citizen Children Plaintiffs, and the Parent Plaintiffs as their representatives, have established statutory standing.

**B. Sovereign Immunity**

Plaintiffs allege that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1346. Compl. ¶ 11. Well enough. But the United States and its officials cannot be sued without an express waiver of sovereign immunity. *Lane v. Pena*, 518 U.S. 187, 192 (1996). The Government argues that this case must be dismissed because 28 U.S.C. §§ 1331, 1343, and 1346(a)(2) do not provide the requisite waiver of sovereign immunity and therefore this Court lacks jurisdiction to hear the Plaintiffs' claims. Further, the Government argues that the Court lacks jurisdiction until the Parent Plaintiffs file a refund action for their 2020 taxes (in year 2021) and exhaust their administrative remedies with the IRS under 26 U.S.C. § 7422(a).

In response, Plaintiffs argue that the Court has jurisdiction over the Citizen Children Plaintiffs' claims for injunctive and declaratory relief ("Count I") under 28 U.S.C. § 1331 because they arise under the Constitution and are asserted solely against Defendant Secretary Mnuchin. ECF No. 33 at 4; Compl. ¶¶ 71–74; p. 26–27. I agree. It is true that "section 1331 is

not a general waiver of sovereign immunity" and "merely establishes a subject matter that is within the competence of federal courts to entertain." *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) (internal quotation marks omitted). But *Ex Parte Young*, 209 U.S. 123 (1908) and its progeny established that suits can be maintained for injunctive and declaratory relief for alleged violations of federal law by federal officers. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015) ("[W]e have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law. . . . But that has been true not only with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials.") (internal citations omitted); *Antrican v. Odom*, 290 F.3d 178, 191 (4th Cir. 2002) (holding suit for declaratory and injunctive relief against North Carolina official falls within *Ex Parte Young* exception for sovereign immunity). Given that Plaintiffs' claims for injunctive and declaratory relief arise under the Constitution and are asserted against a federal officer, this Court has jurisdiction to hear them.

For the damages claims (Counts II and III), Plaintiffs argue that this Court has jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). "The Tucker Act is a jurisdictional statute that waives sovereign immunity protection and authorizes monetary claims 'founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort.'" *South Carolina v. United States*, 221 F. Supp. 3d 684, 693 (D.S.C. 2016) (quoting 28 U.S.C. §§ 1346, 1491(a)(1)). To invoke the Little Tucker Act's waiver of sovereign immunity, a statute must be "fairly be interpreted as mandating compensation by the Federal Government." *Maine Cmty. Health Options v. United States*, 140

S. Ct. 1308, 1329 (2020) (quoting *Mitchell*, 463 U.S. 206, 216–17 (1983)) (internal quotation marks omitted).  In *Maine Community*, the Supreme Court recently explained the relevant test as follows:

> To determine whether a statutory claim falls within the Tucker Act's immunity waiver, we typically employ a "fair interpretation" test.  A statute creates a "right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'"  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, (2003) (quoting *Mitchell*, 463 U.S. at 217); *see also Navajo Nation*, 556 U.S. at 290 ("The other source of law need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages").

*Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 (2020).  In that case, the Supreme Court held that § 1342 of the ACA (codified at 42 U.S.C. § 18062), which established the "risk corridors" program for compensating insurers for unexpectedly unprofitable plans during the first three years of the ACA's online insurance marketplaces, was a money-mandating statute and that petitioners could sue the Government for damages.  *Id.* at 1315.  In reaching this conclusion, it found the "shall pay" language in § 1342 significant.  It explained:

> Statutory "'shall pay' language" often reflects congressional intent "to create both a right and a remedy" under the Tucker Act.  *Bowen*, 487 U.S. at 906, n. 42; *see also, e.g., id.*, at 923, (Scalia, J., dissenting) ("[A] statute commanding the payment of a specified amount of money by the United States impliedly authorizes (absent other indication) a claim for damages in the defaulted amount"); *United States v. Testan*, 424 U.S. 392, 404 (1976) (suggesting that the Back Pay Act, 5 U.S.C. § 5596, may permit damages suits under the Tucker Act "in carefully limited circumstances"); *Mitchell*, 463 U.S. at 217 (similar).  Section 1342's triple mandate—that the HHS Secretary "shall establish and administer" the program, "shall provide" for payment according to the statutory formula, and "shall pay" qualifying insurers—falls comfortably within the class of money mandating statutes that permit recovery of money damages in the Court of Federal Claims.

*Maine Cmty. Health Options v. United States*, 140 S. Ct. at 1329.  In other words, absent other indication, "shall pay" language is an indication of Congressional intent to waive sovereign

immunity under the Tucker Act. And this type of language in § 1342 of the ACA placed it "comfortably" in this category of money-mandating statutes.

In *Gentry v. United States*, 546 F.2d 343, 348 (Ct. Cl. 1976), the Court of Federal Claims analyzed a waiver of sovereign immunity under the Tucker Act in relation to an equal protection challenge. There plaintiff was an "illegitimate minor child" that filed a claim for benefits allegedly due to him under the under the Civil Service Retirement Act of 1930, as amended, 5 U.S.C. §§ 8331 *et seq.* (1970), as the survivor of his deceased father, a retired civilian welder for the Navy. *Gentry v. United States*, 546 F.2d at 344. The statute expressly excluded the plaintiff from receiving the benefits because the plaintiff did not live with his father. The Government argued that the Court lacked jurisdiction under the Tucker Act because the statute did not provide for any money to plaintiff given the live-in requirement. Plaintiff challenged the live-in requirement as a violation the guarantee of equal protection provided by the due process clause of the Fifth Amendment. To determine whether it had jurisdiction under the Tucker Act, the Court read the statute "in light of the Fifth Amendment." *Gentry v. United States*, 546 F.2d 343, 346 (Ct. Cl. 1976). Put another way, the court construed the statute without the constitutionally offensive language, ultimately finding that it did have jurisdiction and that the live-in requirement was unconstitutional. *Id.* at 347, 354.

These cases provide support for the position that this Court has jurisdiction over the damages claims under the Little Tucker Act. The CARES Act contains compulsory language for economic impact payments similar to the language in § 1342 of the ACA discussed in *Maine Community*. Section 1342 of the ACA provided that that the HHS Secretary "shall establish and administer" the risk corridors program, "shall provide" for payment according to the statutory formula, and "shall pay" qualifying insurers. *Maine Cmty. Health Options v. United States*, 140

S. Ct. at 1329. The CARES Act provides for economic impact payments by creating a legal fiction that qualified individuals "overpaid" on previously filed taxes. The Act states "there *shall* be allowed a credit" of $1,200 for eligible individuals and $500 for qualifying children for this overpayment and that "[t]he Secretary *shall, subject to the provisions of this title, refund or credit any overpayment attributable to this section as rapidly as possible*." 26 U.S. Code §§ 6428(a), (f)(3)(a) (emphasis added). The Act therefore requires the government to pay the fictional overpayment, and be quick about it. This indicates that 26 U.S. Code § 6428 is a money-mandating statute. And like in *Gentry*, this Court should consider the statute "in light of the Fifth Amendment," such that the alleged unconstitutional discrimination that Plaintiffs challenge in the statute is not itself a bar to finding jurisdiction.

The Government argues that 26 U.S.C. § 6428 is not a money-mandating statute because it is a tax statute. True. But the two are not mutually exclusive. *See, e.g., Pfizer Inc. v. United States*, 939 F.3d 173, 179 (2d Cir. 2019) (finding Court of Federal Claims had jurisdiction under Tucker Act for suit regarding tax overpayment interest under 26 U.S.C. § 1611); *New York & Presbyterian Hosp. v. United States*, 881 F.3d 877, 888 (Fed. Cir. 2018) (holding that 26 U.S.C. § 3102(b) regarding Federal Insurance Contribution Act taxes is a money-mandating provision providing jurisdiction under the Tucker Act). Therefore for the reasons stated above, I find that the Court has jurisdiction over Plaintiffs' damages claims under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).

Finally, Plaintiffs need not exhaust administrative remedies with the IRS under 26 U.S.C. § 7422(a), as suggested by the Government, for this Court to have jurisdiction over any of the claims. That section provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or

14

> collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). By its plain language, § 7422(a) does not apply here because it is not a suit for any tax, penalty, or sum wrongfully collected. *See also King v. Burwell*, 759 F.3d 358, 366–67 (4th Cir. 2014) (emphasis in original), *aff'd* 135 S. Ct. 2480 (2015) ("Section 7422(a) does not allow for prospective relief. Instead, it bars [absent exhaustion] suit for the *recovery* of any internal revenue tax alleged to have been erroneously or illegally assessed or collected.").

Thus, the Court finds that it has subject matter jurisdiction over all of Plaintiffs' claims.

**C. Failure to State a Claim**

Finally, the Government argues that Plaintiffs have failed to state an equal protection claim. The Government argues that 26 U.S.C. § 6428(g) is not an impermissible alienage classification because it concerns whether individuals have an SSN, and not their alienage. The Government asserts that the SSN requirement is a policy choice to provide economic impact payments based on work authorization. And that even if the eligibility requirements implicated alienage, it would be subject to rational basis review. *See Matthews v. Diaz*, 426 U.S. 67, 81–85 (1976). Under rational basis review, the statute "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to" a legitimate interest. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The Government argues that § 6428(g) passes that test because it assists with the efficient and accurate implementation of the CARES Act.

In response, Plaintiffs argue that 26 U.S.C. § 6428(g)'s SSN requirement is an impermissible proxy to exclude undocumented immigrants. *See Personnel Adm'r of Mass. v.*

*Feeney*, 442 U.S. 256, 272 (1979) ("a classification that is ostensibly neutral but is an obvious pretext for racial discrimination" is "presumptively invalid").  In support of their position, Plaintiffs argue that undocumented immigrants cannot obtain an SSN and that the Government's work authorization justification does not withstand scrutiny including because the CARES Act provides benefits for children only if they are dependent.  Further, Plaintiffs point out that they are challenging § 6428(g)'s alleged alienage classification as it applies to payments for qualifying children.  In this way they are challenging discrimination against U.S. citizen children based on their parents' status, which they argue receives heightened scrutiny review.  *See Clark v. Jeter*, 486 U.S. 456, 461 (1988) (applying heightened scrutiny to statute of limitations for paternity suit and summarizing its prior holding in *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164 , 175 (1972) that "[b]urden[ing] . . . children for the sake of punishing the illicit" status of their parents "is illogical and unjust."); *Lewis v. Thompson*, 252 F.3d 567, 590–91 (2d Cir. 2001) (applying heightened scrutiny to exclusion of citizen children of undocumented mothers from automatic Medicaid enrollment).  And regardless of whether rational basis or heightened scrutiny applies, Plaintiffs argue the Government's proffered bureaucratic efficiency reasons provide no justification for how the Government's interests are furthered by excluding otherwise qualifying U.S. citizen children whose parents do not have SSNs from receiving the benefit of economic impact payments.

Plaintiffs have properly alleged an equal protection claim.  They have adequately pled that the CARES Act discriminates against the Citizen Children Plaintiffs and the Parent Plaintiffs as their representatives based on their parents' alienage.  I need not decide whether rational basis or heightened scrutiny applies at this stage, because under either standard the Government's

proffered rationale to date does not warrant dismissal of their claims. The parties will be able to brief these issues more fully for the Court's consideration at the summary judgment stage.

### Conclusion

Based on the complaint and the submissions to date, I find that Plaintiffs have established Article III and statutory standing, that this Court has subject matter jurisdiction over their claims, and that they have adequately alleged an equal protection claim. Therefore the Government's letter, ECF No. 32, is construed as a motion to dismiss and is denied. The Government is directed to file an answer by July 10, 2020. I will schedule a conference with the parties to discuss whether discovery is needed and schedule summary judgment briefing. To the extent the Government wishes to reassert its arguments for dismissal discussed above with additional authority, it will be permitted to do so at the summary judgment stage.

### ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 19th day of June 2020, hereby ORDERED:

1. The Government's letter, ECF No. 32, is construed as a motion to dismiss and is DENIED;
2. The Government is directed to file an answer by July 10, 2020;
3. The Court will schedule a conference call with the parties to discuss whether discovery is needed and to schedule summary judgment briefing.

                                               /S/
                                       Paul W. Grimm
                                       United States District Judge