**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| | * | |
| **R.V.,** *et al.*, | * | |
| *Plaintiffs,* | | |
| | * | |
| | | **Case No.: 8:20-cv-1148-PWG** |
| **v.** | * | |
| **STEVEN L. MNUCHIN,** *et al.*, | * | |
| *Defendants.* | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MEMORANDUM OPINION AND ORDER**

In March 2020, in response to the devastating financial impact of the COVID-19 pandemic on American families, Congress passed and signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The CARES Act "implemented a variety of programs to address issues related to the onset of the COVID-19 pandemic," and aimed to provide "fast and direct economic assistance for American workers, families, small businesses, and industries."[1] One form of relief provided by the CARES Act is the distribution of economic impact payments ("CARES Act Credits") to certain qualifying taxpayers. At issue in this case is the child Plaintiffs' exclusion from the CARES Act Credits' recipient pool, allegedly due to their parents' immigration status.

---

[1]     *About the CARES Act and the Consolidated Appropriations Act,* U.S. DEPT. OF THE TREASURY, https://home.treasury.gov/policy-issues/coronavirus/about-the-cares-act (last visited Oct. 25, 2021).

The Plaintiffs in this case are the minor citizen-children of undocumented immigrants ("Plaintiff Children") and their undocumented parents ("Plaintiff Parents"). Although the Plaintiff Parents are alleged to have filed yearly tax returns[2] through the use of an Individual Taxpayer Identification Number ("ITIN"), they are not eligible to receive a CARES Act Credit because they do not have social security numbers ("SSNs"), which are prerequisite under the statute. 26 U.S.C. § 6428(g). Central to this case is the fact that, due to their immigration status, the Plaintiff Parents are also ineligible to receive the additional $500 Credit per "qualifying child" authorized by § 6428(a)(2).

The Plaintiff Children claim that the CARES Act's SSN requirement violates their implied right to equal protection under the Fifth Amendment of the U.S. Constitution. ECF 59, Pl. Motion at 1–2. The Plaintiff Children, who are American citizens, argue that they are subject to disparate treatment based on their parents' immigration status as compared to American citizen-children with two American citizen-parents. *Id.* The Defendants, the United States of America and former Treasury Secretary Steven T. Mnuchin (collectively, the "Government"), disagree, and argue that the challenged provision of the CARES Act is a permissible exercise of Congress's substantial authority to legislate regarding immigration and naturalization. ECF 73, Def. Motion at 1–2. The Government also argues that because the challenged provision of the CARES Act confers benefits directly on taxpayers, and not on taxpayers' children, the Plaintiff Children lack Article III standing to pursue their claims. *Id.*[3]

---

[2]     *But see* Def. Motion at 13 n. 6, stating there is no record that one of the Plaintiff Parents filed tax returns in 2018 or 2019.

[3]     The Parties' respective Motions for Summary Judgment also address statutory standing and sovereign immunity. Pl. Motion at 10–11; Def. Motion at 18. *See also* ECF 34, Mem. Opinion on MTD. Because I conclude that the challenged statute passes constitutional muster, I do not reach these statutory issues.

For the reasons set forth in this Opinion, I find that the Plaintiff Children have standing to challenge the constitutionality of the relevant statute, 26 U.S.C. § 6428. I also find, however, that § 6428 does not violate the Plaintiff Children's implied Fifth Amendment right to equal protection, and that the statute falls well within Congress's expansive authority to legislate regarding immigration and naturalization.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

Section 2201 of the CARES Act, codified at § 6428 of the Internal Revenue Code, provides that "in the case of an eligible individual, there shall be allowed as a credit" up to $1,200[5] for eligible individuals, plus an additional $500 for each of the eligible individuals' qualifying children. 26 U.S.C. § 6428(a). The statute directs the Secretary of the Treasury to certify and disburse the authorized Credits "as rapidly as possible" and requires that "no refund or credit shall be made or allowed" after December 31, 2020. *Id.* § 6428(f). CARES Act Credits are distributed either in the form of an advance tax refund, or in the form of a refundable tax credit "by creating a legal fiction that qualified individuals 'overpaid' on previously filed tax returns." Mem. Opinion on MTD at 14.[6]

---

[4]    My conclusion is consistent with that of the Central District of California in *Doe v. Trump*, Case No. 820CV00858SVWJEM, 2020 WL 5076999 at *9 (C.D. Cal. July 8, 2020), which considered similar arguments and reached the same conclusions in denying a citizen-plaintiff's motion for a temporary restraining order.

[5]    The specific amount paid to a qualifying individual is determined based on that person's adjusted gross income. 26 U.S.C. § 6428(c).

[6]    The CARES Act Credits are distributed in two different ways. Taxpayers who were eligible to receive a Credit based on their 2019 tax return received their Credit in the form of an "advance refund" in 2020. 26 U.S.C. § 6428(f). Individuals who did not receive the Credit to which they are entitled under the statute in 2020 could claim a refundable tax credit on their 2020 tax returns, which would reduce their 2020 tax liability accordingly. *Id.* at § 6428(a). "CARES Act Credits" as the term is used in this Opinion refers to both distribution methods—there is no analytical difference between the two for the purposes of this case.

Not every individual, or even every taxpayer, is entitled to receive CARES Act Credits. As relevant to this case, § 6428(d) defines "eligible individual" as any individual *except* for "any nonresident alien individual" or "any individual with respect to whom a deduction under section 151 is allowable to another taxpayer…." Notably, § 151 of the Internal Revenue Code authorizes a deduction for dependents, 26 U.S.C. § 151(c), including "qualifying children" like the Plaintiff Children. *See* 26 U.S.C. §§ 151(c); 152(a); 152(c). In other words, the Plaintiff Children are expressly *excluded* from receiving the Credits at issue under § 6428.

Section 6428 also requires that an eligible individual have, and disclose on their tax return, a "valid identification number" in order to receive a CARES Act Credit. § 6428(g). The statute defines "valid identification number" as an SSN, as that term is defined in 26 U.S.C. § 24(h)(7).[7] § 6428(g)(3). 26 U.S.C § 24(h)(7) defines SSNs to include social security numbers issued to three categories of persons: (1) "citizens of the United States," (2) immigrants "at the time of their lawful admission to the United States either for permanent residence or under other authority of law permitting them" to work in the United States, and (3) "any other individual[s] when it appears that [they] could have been but [were] not assigned" a SSN at their time of their lawful admission and who are "not, because of [their] [immigrant] status, prohibited from engaging in employment." 26 U.S.C § 24(h)(7) (incorporating by reference 42 U.S.C. § 405(c)(2)(B)(i)(I) and (III)).

Because the definition of "valid identification number" does not include an ITIN, the Plaintiff Parents do not satisfy the criteria to receive a CARES Act Credit. And although there is no dispute that the Plaintiff Children meet the definition of "qualifying child," their parents' immigration status precludes them from collecting the $500 Credit that would otherwise be

---

[7]     The definition of "valid identification number" also encompasses an "adoption taxpayer identification number." *See* § 6428(g)(3)(B).

distributed to the Plaintiff Parents and available for them to use (if they chose to do so) for the Plaintiff Children's benefit. *See* Pl. Motion at 6–7; Def. Motion at 12.

The Plaintiffs filed suit in this Court on May 5, 2020. ECF 1, Complaint. Their Complaint asserts three causes of action. *Id.* In Count I, the Plaintiff Children bring a claim against the former Secretary of the Treasury for intentionally discriminating against the Plaintiff Children, and all others similarly situated, based on their parents' alienage. *Id.* ¶¶ 71–74. The Plaintiff Children allege this discrimination violates their implied right of equal protection under the Fifth Amendment. *Id.* Counts II and III each bring claims against the United States for money damages under § 6428 and 28 U.S.C. 1346(a)(2). *Id.* ¶¶ 75–88. Count II is brought by the Plaintiff Children on behalf of themselves and all others similarly situated. *Id.* ¶¶ 75–80. Count III is brought by the Plaintiff Parents on behalf of themselves and all others similarly situated. *Id.* ¶¶ 81–88.

Additional facts will be provided below as needed.

## STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).

**DISCUSSION**

The parties in this case are largely in agreement as to the material facts. They agree that the Plaintiff Parents do not have SSNs and therefore are ineligible for economic relief under the relevant terms of the CARES Act. 26 U.S.C. § 6428(g). Pl. Motion at 1; Def. Motion at 1. They agree that the Plaintiff Children *do* have SSNs, and that they meet the statutory definition of "qualifying child" under the statute. Pl. Motion at 6, 7; Def. Motion at 12. And they agree, at least with respect to Plaintiff Parent N.R., that if she were a U.S. citizen, or a permanent resident with work authorization, she would be entitled to an individual CARES Act Credit plus an additional $500 Credit for her qualifying child, Plaintiff Child R.V. Pl. Motion at 1–2; Def. Motion at 13 n. 6.

The Parties' dispute centers on three questions of law that I must answer in order to resolve their cross-motions for summary judgment. Those questions are: (1) whether the undisputed facts confer constitutional standing on the Plaintiff Children; (2) if the Plaintiff Children do have standing, what level of constitutional scrutiny applies to the challenged CARES Act provision, § 6428(g); and (3) whether § 6428(g) passes constitutional muster under the appropriate constitutional standard of review.

For the reasons explained below, I conclude that the Plaintiffs have standing to challenge § 6428, but that § 6428 is subject only to rational basis review, which it satisfies.

**I.      The Plaintiffs have Article III Standing**

The Plaintiff Children argue that the Government, via § 6428, has violated their Fifth Amendment right to equal protection by "intentionally discriminat[ing] against U.S. Citizen children who have undocumented parents." Compl. at ¶ 72. The Government counters that the Plaintiff Children lack standing to challenge the constitutionality of § 6428 because, it contends,

6

the CARES Act provides aid in the form of Credits to taxpayers, not to taxpayers' children. Def. Motion at 14–16. Because the Plaintiff Children's Article III[8] standing implicates this Court's jurisdiction, I address that issue first. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260 (1977).

The Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), outlines the familiar "irreducible constitutional minimum of standing," which consists of three elements that the Plaintiffs bear the burden to prove. *First*, the Plaintiffs must demonstrate that they "have suffered an injury in fact." *Id.* (citations omitted). *Second*, the Plaintiffs must establish that there is "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant[.]" *Id. Finally*, the Plaintiffs must demonstrate that their alleged injury is redressable by a favorable decision from the court. *Id.* It "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

Notwithstanding the well-established standard outlined above, the Government urges this Court to start and end its standing inquiry with the "general rule that a party may not challenge the tax liabilities," or credits, of others. Def. Motion at 14 (citing *Williams*, 514 U.S. at 539). The Government cites a series of cases from other Federal Circuits to support the proposition that courts consistently hold "that individuals do not have Article III standing to assert a challenge related to another's tax liabilities ," even where a favorable finding by the court "would inure to the benefit" of a dependent child "through a larger refund to his or her parents." *Id.* at 15 (collecting cases). Having reviewed the cases on which the Government relies, I find that the Government advocates

---

[8]     The Government challenges both the Plaintiffs' Article III standing and their statutory standing. Def. Motion at 18. Because I resolve the merits of the constitutional question in the Government's favor, I need not reach the issue of statutory standing.

for a standing inquiry that is far more rigid than that which is required to determine whether the

Plaintiffs have Article III standing in this case.[9]

      Determining whether a party has Article III standing to challenge a government action is

not a mechanical exercise. *Allen v. Wright*, 468 U.S. 737, 751 (1984). And the Supreme Court has

observed that, when interpreting a federal statute to determine whether it confers standing on a

particular plaintiff, it favors "substance over form" and has a "preference for commonsense

inquiries over formalism." *See United States v. Williams,* 514 U.S. 527, 535–36 (1995).

Furthermore, "although parties generally may not challenge the tax liabilities of others, this rule is

not unyielding." *Id.* at 539. In fact, courts have had occasion to find Article III standing in cases

where a plaintiff other than the party against whom a tax liability is assessed challenges the

constitutionality of the applicable statute. *See, e.g.*, *id.* More significantly for the purposes of this

case, courts do not bypass the Article III standing inquiry simply because the challenged statute is

found in the tax code. *See, e.g.*, *Allen v. Wright*, 468 U.S. 737 (1984) (abrogated on other grounds);

*Doe v. Trump*, Case No. 820CV00858SVWJEM, 2020 WL 5076999 at *3 (C.D. Cal. July 8, 2020).

Accordingly, I turn to the Plaintiffs' Article III standing under *Lujan*, *supra*.

---

[9]      The cases the Government cites involve alleged injuries that are far more attenuated from the tax statutes at issue than that which the Plaintiff Children allege in this case. In *Fulani v. Brady*, for example, the plaintiff, a third-party presidential candidate claimed she was "injured by the fact that the [sponsor of the presidential debates] is engaging in a campaign of misinformation, perpetuating *bi*partisan, rather than *non* partisan, political debates." 935 F.2d 1324, 1326 (D.C. Cir. 1991). The plaintiff filed suit against the IRS attacking the sponsor's tax-exempt status and claiming her injury was traceable to the IRS granting that status and could be redressed by ordering the IRS to revoke it. *Id.* Several other cases the Government cites do not address standing at all, but simply assess whether different kinds of benefits were provided directly to children, or to their parents for the children's benefit. *See, e.g.*, *In re Parisi*, No. 10-70021-478, 2010 WL 1849386 at *2 (E.D.N.Y. May 6, 2020); *In re Hardy*, 787 F.3d 1189, 1193–94 (8th Cir. 2015).

Of the three elements of Article III standing, the Government only challenges whether the Plaintiff Children have suffered an injury in fact. *See generally* Def. Motion.[10] The Government appears to concede that any such injury is "fairly traceable" to government action and that it is redressable by the Court.[11]

The Supreme Court in *Lujan* defines "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." 504 U.S. at 560. The "'injury in fact' test requires more than an injury to a cognizable interest." *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735–36 (1972)). It also requires that the party seeking relief "be himself among the injured." *Id.*

The Plaintiff Children and the Government focus on two different alleged injuries in their respective efforts to demonstrate whether or not the Plaintiff Children have suffered an injury-in-fact. The Government focuses on the Plaintiff Children's claimed entitlement (or lack thereof) to the $500 CARES Act Credit itself. Def. Motion at 12–16. It is easy to see why the Government does so, because the language of § 6428 makes clear that the $500 per qualifying child Credit is conferred on the qualifying *parent* of such a child, not the child themself. *See* § 6428(a)(2) ("In the case of an eligible individual, there shall be allowed as a credit . . . an amount equal to the sum of . . . $500 multiplied by the number of qualifying children . . . of the taxpayer."). The Government reasons that, because the language of the CARES Act does not afford a $500 benefit to *any*

---

[10]     The Government's reply raises a factual challenge to the traceability of Plaintiff Parent H.G.T.'s children's alleged injury. ECF 75, Def. Reply at 9. The Government does not challenge traceability with respect to Plaintiff Child R.V.

[11]     To the extent the remaining elements are not conceded by the Government, they are readily apparent. Any and all of the Plaintiffs' alleged injuries are directly traceable to the government-created distinction between taxpayers with SSNs, who qualify for the CARES Act Credit, and those without SSNs, who do not. And if the Court were to grant the Plaintiffs' request for injunctive, declaratory, and/or monetary relief, their alleged injury would be redressed. *See Trump*, 2020 WL 5076999 at *3.

dependent child, regardless of their parents' citizenship status, the Plaintiff Children have suffered no direct injury, and "an individual who is not the intended recipient of a tax credit cannot establish standing by claiming an indirect injury caused by the denial of the credit." Def. Motion at 13.

The Plaintiff Children argue that the Government fundamentally misunderstands their constitutional claim. Pl. Motion at 2. The constitutional injury the Plaintiff Children allege is not the loss of the $500 CARES Act Credit, but rather the fact that they, as United States citizens with one or more undocumented parents, are treated differently than citizen-children with two citizen-parents. Their injury, in other words, is the disparate treatment in and of itself, which, they insist, makes them "second class" citizens as compared to citizen children of parents who do qualify for the CARES Act Credit. *Id.* at 1–3.

The Supreme Court resoundingly supports the Plaintiff Children's position that disparate treatment alone is sufficiently injurious to confer Article III standing. In *Heckler v. Matthews*, the Supreme Court explained that "the right to equal treatment guaranteed by the Constitution is not co-extensive with any substantive rights to the benefits denied the party discriminated against. Rather, as we have repeatedly emphasized, *discrimination itself*, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy . . . *can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group*." 465 U.S. 728, 739–40, (1984) (emphasis added). The Fourth Circuit, citing *Heckler*, concurs that "[d]iscriminatory treatment is a harm that is sufficiently particular to qualify as an actual injury for standing purposes." *Planned Parenthood of S.C., Inc. v. Rose*, 361 F.3d 786, 790 (4th Cir. 2004).

Consistent with the authority cited above, I find that the disparate treatment the Plaintiff Children allege constitutes an injury-in-fact for Article III standing purposes. *See Doe v. Trump*, 2020 WL 5076999 at *3 (concluding a plaintiff challenging the CARES Act had standing because "she has suffered a 'concrete and particularized' injury because she has been treated differently from other citizens otherwise similarly situated. . . "). The unequal treatment of children of undocumented immigrants due to their parents' alienage is injurious unto itself, and because the Government does not challenge the injury's traceability to government action or its redressability by the Court, I conclude that the Plaintiff Children have standing to challenge the constitutionality of § 6428(g). I note, however, that the fact that the Plaintiff Children have alleged an injury sufficient to confer Article III standing has little bearing on whether that injury violates their constitutional rights. *See Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214 at n. 5 (4th Cir. 2020), *as amended* (Aug. 31, 2020) (noting that "standing to assert a claim is distinct" from its merits.).

## II.   Section 6428(g) does not violate the Equal Protection Clause of the Fifth Amendment.

Having determined that the Plaintiff Children have standing, I now turn to their challenge to 26 U.S.C. § 6428(g)'s requirement that limits the availability of CARES Act Credits to taxpayers who have a "valid identification number", defined under the statute as a social security number. 26 U.S.C. § 6428(g)(3). For ease of reference, I will refer to this requirement as the "SSN" requirement.

As the Plaintiff Children see it, § 6428(g) violates the implied equal protection component of the Fifth Amendment's due process protections by treating the citizen children of parents who are themselves citizens (or non-citizens who have received authorization to work in the United States) more favorably than the citizen children of taxpayer parents who are non-citizens who have

11

not been authorized to work. Pl. Motion at 9–12. The Plaintiff Children contend that this classification makes the citizen-children of parents who lack work authorization "second class citizens," and that such a classification is subject to "heightened" scrutiny. *Id.*

The Government sees things very differently and raises several compelling arguments for why rational basis review must apply to § 6428(g). First, the Government points out, quite correctly, that § 6428(d)(2) excludes *all* children from the definition of individuals eligible for the CARES Act tax credit, whether their parents are citizens, non-citizens authorized to work, or non-citizens without such authorization. Def. Motion at 12–13. In other words, *no* dependent children of taxpayers are eligible for the CARES Act Credit—only their parents, if otherwise qualified, are entitled to receive that benefit.[12] *Id.* In this sense, § 6428 treats all dependent citizen children the same by deeming them ineligible for a CARES Act Credit.

The Government argues next that accepting the Plaintiffs' characterization of § 6428(g) as discriminating based on alienage would require the Court to read into the SSN requirement language that simply is not there. The Defendants see in §6428(g) a statutory line that divides individuals authorized to work within the United States and those who are not, which cannot fairly be viewed as a classification based on alienage because statutory authorization for the issuance of an SSN includes both citizens and (certain) non-citizens alike.[13] Def. Motion at 20. A line drawn

---

[12]     The Government further argues that the Plaintiff Children have chosen to advance their own claims as citizen children instead of those of their taxpayer parents solely for the tactical purpose of avoiding rational basis analysis. Def. Motion at 19 n. 8. Rational basis review is the lowest tier of constitutional scrutiny, and it is highly deferential to government action, particularly when the challenged statute addresses immigration issues. *Id.* If that was the Plaintiffs' strategy, it was unsuccessful, for reasons that are explained below.

[13]     42 U.S.C. §405(c)(2)(B)(i)(I) and (III) authorizes the issuance of SSNs to "aliens at the time of their lawful admission to the United States either for permanent residence or under other authority of law *permitting them to engage in employment* in the United States and to other aliens at such time as their status is so changed as to make it *lawful for them to engage in employment*;

between persons authorized to work in the United States and those who are not implicates no suspect or quasi-suspect class, and therefore requires only rational basis review. *Id.*

Finally, and most compellingly, the Government argues that, even accepting the Plaintiffs' theory of discrimination based on alienage or immigration status, the Supreme Court and other federal courts have applied rational basis analysis to such classifications, and in doing so have demonstrated extreme deference to the Congressional and Executive branches. *Id.* at 21. The Defendants cite strong authority in support of this position.

If the challenged provision of the CARES Act does draw a line based on a taxpayer's alienage or immigration status, there can be no doubt that it constitutes congressional action relating to immigration and naturalization, despite the fact that it was enacted as part of the tax code. In *Mathews v. Diaz*, the Supreme Court made it quite clear that "the responsibility for regulating the relationship between the United States and our Alien visitors has been committed to the political branches of the Federal Government." 426 U.S. at 81–82. The Court in *Mathews* could not have been more emphatic that the deferential rational basis test applied, despite the fact that the congressional action under attack was in the Social Security Act, rather than a statute directly addressing immigration and naturalization enacted pursuant to Congress's Article I section 8 authority to "establish a uniform rule of naturalization."[14] *Id.*; U.S. CONST. art. I, § 8, cl. 4.

_____

as well as "any other such person who is a citizen or non-citizen who is not because of his alien status, prohibited from *engaging in employment*." (emphasis added).

[14]      *See also Aleman v. Glickman*, 217 F.3d 1191, 1199 (9th Cir. 2000) ("When previously faced with a federal classification among aliens in the distribution of welfare benefits, we found [*Mathews*] dispositive as to the appropriate level of judicial review," which is rational basis.); *City of Chicago v. Shalala*, 189 F.3d 598, 604 (7th Cir. 1999) (recognizing the federal government's "plenary authority over issues of immigration and naturalization."); *Rodriguez ex rel. Rodriguez v. United States*, 169 F. 3d 1342, 1349 (11th Cir. 1999) (rejecting the plaintiffs' argument that rational basis review applies "only to legislation affecting aliens' ability to enter and exit the United States and the terms of their naturalization. . . . The Court rejected in *Mathews* the narrow

In a related context, the Fourth Circuit found that legal classifications based on legitimacy ordinarily are reviewed under intermediate scrutiny, *unless* the context of the classification occurs in the area of immigration. *Johnson v. Whitehead*, 647 F. 3d 120, 126 (4th Cir. 2011). The Court explained that "in matters of immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens,'" and applied rational basis analysis, not intermediate scrutiny, to uphold a statute that, *inter alia*, conferred citizenship on marital children of naturalized parents with sole custody after a legal separation, but not on non-marital children of naturalized parents who never were married, but who had separated. *Id*. at 127.

Similarly, courts frequently have rejected arguments by citizen children that the deportation of their noncitizen parents deprive them of their own constitutional rights. *See Perdido v. INS*, 420 F.2d 1179, 1180–81 (5th Cir. 1969) (applying rational basis and finding that Congress made a "reasonable and rational distinction" with no "constitutional infirmity" when it only allowed citizens age 21 and older to confer immigration benefits on their parents.); *Delgado v. INS*, 637 F.2d 762, 763 (10th Cir. 1980) ("[Plaintiff] Delgado asserts that his deportation will deprive his children of their Fifth and Fourteenth Amendment rights. . . his children will be forced either to accompany their father to Mexico or to remain in this country without him . . . One of these undesirable consequences certainly will occur if Delgado is deported . . . . We cannot say, however, that the government's action is rendered unconstitutional by such consequences."); *Kruer ex rel. S.K. v. Gonzales*, No. Civ.A. 05-120-DLB, 2005 WL 1529987 at *7 (E.D. Ky. June

---

view of Congress' sovereign power over immigration, the court stated that 'the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. . . . *Mathews* specifically held a statute discriminating among aliens in the provision of Medicare, a form of welfare benefits, does lie within Congress' power 'in the area of immigration and naturalization, and for that reason is subject to rational basis scrutiny.") (internal citations omitted).

28, 2005) (collecting cases) ("The rejection of such constitutional challenges by the various courts noted above is centered around the recognition of Congress' power to regulate immigration. . . . without violating constitutional rights, even where conditions might be burdensome to children or the family unit.").

Consistent with that authority, because the Plaintiff Children's claims stem from their noncitizen parents' ineligibility for CARES Act Credits, those claims must be analyzed through the lens of a statute regulating immigration and naturalization.

In *Mathews v. Diaz*, 426 U.S. 67, 81–82 (1976), Justice Stevens, writing for a unanimous Court, explained at length why courts properly give Congress and the President wide latitude to regulate the relationship between the United States and its "alien visitors." *Id. Mathews* involved a suit by resident aliens challenging a provision of the Social Security Act that made citizens eligible for Medicare Part B supplemental medical insurance at 65 years old, but denied it to non-citizens unless they were permanent residents who had resided in the United States for at least five years. *Id.* The Court upheld the statute, and explained at length why Congress's statutory line-drawing when deciding whether non-citizens are entitled to the same welfare benefits as citizens is deserving of particular deference by the courts. *Id.* Justice Stevens' analysis is particularly instructive in this case, and deserves to be considered in some detail. He wrote:

> For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary . . . . Any rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution. **The reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization**.

Since it is obvious that Congress has no constitutional duty to provide [a]ll aliens with the welfare benefits provided to citizens, **the party challenging the constitutionality of the particular line Congress has drawn has the burden of advancing principled reasoning that will at once invalidate that line and yet tolerate a different line separating some aliens from others**. In this case the appellees have challenged two requirements first, that the alien be admitted as a permanent resident, and, second, that his residence be of a duration of at least five years. But if these requirements were eliminated, surely Congress would at least require that the alien's entry be lawful; even then, unless mere transients are to be held constitutionally entitled to benefits, some durational requirement would certainly be appropriate. In short, it is unquestionably reasonable for Congress to make an alien's eligibility depend on both the character and duration of his residence. Since neither requirement is wholly irrational, this case essentially involves nothing more than a claim that it would have been more reasonable for Congress to select somewhat different requirements of the same kind.

We may assume that the five-year line drawn by Congress is longer than necessary to protect the fiscal integrity of the [Medicare Part B] program. **We may also assume that unnecessary hardship is incurred by some harsh and apparently arbitrary consequences, and, of greatest importance, that those who qualify under the test Congress has chosen may reasonably be presumed to have a greater affinity with the United States than those who do not. In short, citizens and those who are most like citizens qualify. Those who are less like citizens do not.**

The task of classifying persons for medical benefits, like the task of drawing lines for federal tax purposes, inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line; the differences in degree rather than differences in the character of their respective claims**. When this kind of policy choice must be made, we are especially reluctant to question the exercise of congressional judgment. In this case, since appellees have not identified a principled basis for prescribing a different standard than the one selected by Congress, they have, in effect, merely invited us to substitute our judgment for that of Congress in deciding which aliens shall be eligible to participate in the supplementary insurance program on the same conditions as citizens. We decline the invitation**.

*Mathews*, 426 U.S. at 81–84 (emphasis added).

In this case, as in *Mathews*, Congress had to determine where to draw the line between those who qualified to receive statutory benefits (the CARES Act Credits) and those who did not. Legislating in the midst of an unprecedented public health and economic crisis, it chose to use the

income tax code as a vehicle to accurately determine who would qualify for the Credits based on information readily available from previously filed tax returns, and to get those payments to taxpayers "as rapidly as possible" to offset a spiraling downturn of the economy caused by COVID-19. Congress drew that line based on a taxpayer's authorization to work in the United States, a classification that included non-citizens who are legally authorized to work in the United States, and excluded non-citizens who were not so authorized, even those who paid taxes through the use of an ITIN. As in *Mathews*, Congress included those non-citizens who are "most like citizens," *i.e.*, those with SSNs, to receive the tax credit, and excluded those without SSNs, who are "less like citizens." *Mathews*, 426 U.S. at 83. Further, as in *Mathews,* it is likely that non-citizens without work authorization (and their children) incurred "unnecessary hardship" as a result of the choices made by Congress. *Id*.

It is as clear in this case as it was in *Mathews* that Congress had no constitutional duty to provide all non-citizens with the same benefits it provided to citizens. *Mathews*, 426 U.S. at 81–82. *Mathews* held that it is "unquestionably reasonable" to make a non-citizen's eligibility depend on the character of his or her residence in the United States, and that is what Congress did by conditioning eligibility for a CARES Act Credit on having an SSN. That economic hardship flowed to those non-citizens who were not eligible for the credit surely is regrettable, but the policy choice made in the CARES Act is exactly the type of congressional judgment that courts have been "especially reluctant to question." *Id*. And, when called upon to review legislative enactments relating to non-citizens, courts have been very deferential to the choices made by Congress, so long as they were supported by a rational basis. *See Fiallo v. Bell*, 430 U.S. 787 (1977); *United States v. Carpio-Leon*, 701 F.3d 974 (4th Cir. 2012); *Aleman v. Glickman*, 217 F.3d 1191 (9th Cir.

2000); *City of Chicago v. Shalala*, 189 F.3d 598 (7th Cir. 1999); *Rodriguez ex rel Rodriguez v. United States*, 169 F.3d 1342 (11th Cir. 1999).

The authority cited above reveals that it ultimately makes no difference whether I accept the Plaintiffs' or Defendants' reading of § 6428(g). Either the statute differentiates between individuals authorized to work in the United States and individuals who are not authorized to work in the United States, in which case the statute implicates no suspect or quasi-suspect class and rational basis review applies, or the statute differentiates based on immigration status, in which case Congress is entitled to extraordinary deference, and rational basis review applies. Accordingly, I analyze the challenged provision of the CARES Act under rational basis review below.

Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Rational basis review is highly deferential—it is not "a license for courts to judge the wisdom, fairness, or logic of legislative choices. Nor does it authorize the judiciary to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations[.]" *Heller v. Doe*, 509 U.S. 312, 319–20 (1993). Indeed, "a statute must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis" for the challenged classification. *Id.* at 320–21. And the legislature "need not actually articulate the legitimate purpose or rationale that supports the classification at issue." *Id.* Furthermore, when a challenged legislation is subject to rational basis review, the government is not obligated "to produce evidence to sustain the rationality of a statutory classification." *Doe v. Trump*, 2020 WL 5076999 at *4. Instead, the plaintiff "bears the heavy burden of negating every conceivable basis which might reasonably

support the challenged classification." *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Authority*, 507 F.3d 290, 293 (4th Cir. 2007).

The Government identifies two bases for the inclusion of the SSN requirement in § 6428(g). *First*, the Government notes that Congress may have limited the distribution of CARES Act Credits to individuals with SSNs due to "administrative exigency." Def. Motion at 23–24 (citing *Doe v. Trump*, 2020 WL 5076999 at *4–5). The Government notes that "Congress, in an attempt to rapidly distribute payments to eligible individuals, could rationally limit those payments to individuals with SSNs, because this limitation helped ensure that the recipients are authorized to work in the United States and are not nonresident aliens." Def. Motion at 23–24. And *second*, the Government offers that another "justification for the SSN requirement is that Congress decided to allocate refundable tax credits only to individuals authorized to work in this country, given the scarcity of government resources during the pandemic emergency." *Id*. Both justifications the Government provides are rationally related to a legitimate government interest, and therefore satisfy rational basis review.

The Plaintiffs argue that § 6428(g) lacks a rational basis. Pl. Motion at 24. Their argument, which is focused on the rationality of "the discrimination against citizen children" is unconvincing. *Id.* For starters, the authority outlined above demonstrates that when a citizen child claims a personal constitutional violation based on government treatment of an undocumented parent, the reviewing court's analysis remains focused on the challenged statute's relationship to those it most directly effects, not their children. *See Perdido*, 420 F.2d at 1180–81; *Delgado*, 637 F.2d at 763; *Kruer*, 2005 WL 1529987 at *7, *supra* at p. 14. Additionally, the Plaintiffs' analysis of the legitimacy of the alleged government interests advanced by the SSN requirement falls short. The Plaintiffs claim that "because there is no earned income requirement in § 6428, limiting the

19

assistance to those with work authorization cannot rationally be expected to remove an incentive for unauthorized work." Pl. Motion at 24. But disincentivizing unauthorized work is not the only legitimate interest that may be advanced by the SSN requirement. The Plaintiffs do not meaningfully respond to the reasons proffered in the Government's Motion for Summary Judgment—efficiency and resource preservation—except by citing a series of cases that concluded that various challenged statutes aimed at resource preservation *did* satisfy rational basis review. ECF 74, Pl. Reply at 26. In short, the Plaintiffs have not satisfied their "heavy burden of negating every conceivable basis which might reasonably support the challenged classification." *Van Der Linde*, 507 F.3d at 293.

For the reasons explained above, I conclude that the challenged portion of the CARES Act, 26 U.S.C. § 6428(g), is subject to rational basis review, and that the statute satisfies that highly deferential standard.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted in part and denied in part, and Defendants' Motion for Summary Judgment is granted in part and denied in part. Because I have determined that the challenged statute passes equal protection muster, the Plaintiffs claims for declaratory relief and monetary damages, which depend on the success of their constitutional challenges, also must be denied. Similarly, Plaintiffs' efforts to advance class claims must fail. A separate order will be issued contemporaneously herewith.


DATED: November 4, 2021                                  /S/ _____
                                                        Paul W. Grimm
                                                        United States District Judge